**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| IN RE: FLOWERS FOODS INC. DERIVATIVE LITIGATION | ) ) ) Master File No.: 7:18-cv-00084-WLS ) |
| This Document Relates To:  ALL ACTIONS. | ) ) ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

OVERVIEW OF THE LITIGATION ................................................................................. 3

    I.    Plaintiffs' and the Shareholder's Allegations ................................................. 3

    II.    Procedural History ........................................................................................ 4

        A.    The Federal Derivative Action ................................................................. 4

        B.    The State Derivative Action ...................................................................... 4

        C.    The Shareholder Demand ......................................................................... 5

        D.    Settlement Negotiations ............................................................................ 5

THE SETTLEMENT ........................................................................................................... 6

ARGUMENT ....................................................................................................................... 8

    I.    The Court Should Preliminarily Approve the Settlement. ............................. 8

        A.    The Settlement Confers Benefits and Falls Within the Range of Possible Approval ....................................................................................... 10

        B.    Plaintiffs and the Shareholder Faced a Real Risk of No Recovery Had They Continued to Litigate ............................................................... 12

        C.    The Settlement Merits a Presumption of Fairness Because It Is the Product of Arm's-Length Negotiations by Experienced and Well-Informed Counsel ..... 14

    II.    The Proposed Form and Means of Notice Meet Due Process Standards ................. 16

PROPOSED SCHEDULE OF EVENTS ........................................................................... 17

CONCLUSION .................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ................................................................................ 10

*Carlough v. Amchem Prods., Inc.*,
   158 F.R.D. 314 (E.D. Pa. 1993) ............................................................................. 16

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ....................................................... 10, 11, 14

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................................. 8, 13

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ..................................................................................... 15

*Griffith v. Providence Health & Servs.*,
   No. C14-1720-JCC, 2017 WL 10643924 (W.D. Wash. Mar. 21, 2017)................. 15

*Gumm v. Ford*,
   No. 5:15-CV-41 (MTT), 2019 WL 2017497 (M.D. Ga. May 7, 2019)...................... 8

*In re Caremark Int'l Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996) ................................................................................ 13

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ................................................................................. 8, 9

*In re Currency Conversion Fee Antitrust Litig.*,
   No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)............................. 9

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................... 9

*In re NeuStar, Inc. Sec. Litig.*,
   No. 1:14-cv-885 (JCC/TRJ), 2015 WL 8484438 (E.D. Va. Dec. 8, 2015) ............. 15

*In re NVIDIA Corp. Derivative Litig*,
  Master File No. C-06-06110-SBA, 2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009) 10

*In re Pfizer Inc., S'holder Derivative Litig*.,
  780 F. Supp. 2d 336 (S.D.N.Y. 2011) .................................................................... 10

*In re Prudential Sec. Inc. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .......................................................................... 9

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................................. 14

*Karvaly v. eBay, Inc.,*
  245 F.R.D. 71 (E.D.N.Y. 2007)............................................................................. 9

*Lake v. First Nationwide Bank,*
  900 F. Supp. 726 (E.D. Pa. 1995)......................................................................... 14

*LR Trust v. Rogers,*
  Case No. 1:16-cv-4132 (M.D. Ga. Sept. 18, 2018) ................................................ 17

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ................................................................... 8, 10, 13

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ............................................................................................. 10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ............................................................................................. 16

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco,*
  688 F.2d 615 (9th Cir. 1982) ................................................................................ 12

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ................................................................................ 15

*Schimmel v. Goldman*,
  57 F.R.D. 481 (S.D.N.Y. 1977) .............................................................................. 8

*Unite Nat'l Ret. Fund v. Watts*,
   No. 04-CV-3603DMC, 2005 WL 2877899 (D.N.J. Oct. 28, 2005) .......................................... 10

*Zimmerman v. Bell*,
   800 F.2d 386 (4th Cir. 1986) ..................................................................................................... 12

**Statutes**

Ga. Code § 14-2-742 .................................................................................................................. 3, 4

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.632 (2004) ..................................................... 8, 14

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................. 8, 16, 17

## INTRODUCTION

Plaintiffs William D. Wrigley ("Wrigley") and Stephen Goldberger ("Goldberger") respectfully submit this Memorandum in support of preliminary approval of the settlement (the "Settlement")[1] of the stockholder derivative claims brought on behalf of nominal defendant Flowers Foods, Inc. ("Flowers" or the "Company") against certain of its current and former directors and officers.[2]  The Settlement resolves the claims in *In re Flowers Foods, Inc. Derivative Litigation*, Master File No. 7:18-cv-00084-WLS pending in this Court (the "Federal Derivative Action"), *In re Flowers Foods, Inc. Derivative Litigation*, Master File No. SUCV2018000405 pending in the Superior Court of Thomas County, Georgia (the "State Derivative Action"), and the claims raised in a litigation demand letter sent to the Company's Board of Directors (the "Board") on June 1, 2018 and the letter dated April 3, 2019 requesting inspection of certain Company books and records (the "Shareholder Demand").[3] The Settlement is the product of extensive arm's-length negotiations between the Settling Parties,[4] which were overseen by an

---

[1]    The Settlement's terms are set forth in the Stipulation and Agreement of Settlement executed by the parties on October 28, 2019 and the exhibits thereto (the "Stipulation"), which is attached to the Declaration of William B. Federman ("Federman Decl.") filed herewith as Exhibit 1.

[2]    "Defendants" refers to George E. Deese, Allen L. Shiver, R. Steven Kinsey, Karyl H. Lauder, Bradley K. Alexander, Rhonda O. Gass, Benjamin H. Griswold, IV, Richard A. Lan, Margaret G. Lewis, Amos R. McMullian, Joseph Vincent Shields, Jr., David V. Singer, James T. Spear, Melvin T. Stith, and C. Martin Wood, III.

[3]    "Plaintiffs" refers to Wrigley and Goldberger, and the plaintiffs in the State Derivative Action, Margaret Cicchini Family Trust (the "Trust") and Frank Garnier ("Garnier"). The "Shareholder" refers to Janet Lovette, who sent the Shareholder Demand.

[4]    Unless otherwise defined herein, all capitalized terms have the same meaning ascribed to them in the Stipulation.

experienced mediator during two full-day in-person mediation sessions.[5]

Under the terms of the Settlement, the Company has agreed to adopt comprehensive corporate governance reforms (the "Reforms") and maintain them for at least four (4) years. The Reforms will significantly improve the Company's compliance with labor and employment laws and internal controls, policies, processes, and procedures relating to the accuracy of the Company's public disclosures moving forward.  As such, the Reforms will help to prevent a recurrence of the alleged wrongdoing at the heart of this litigation and to prevent future damage to the Company of the type alleged by Plaintiffs and Shareholder here.

Among other things, the corporate governance changes to which the parties have agreed require the Company to adopt an amendment to the Board's Audit Committee's charter to specifically task the committee with oversight of certain labor and employee laws, to have its Disclosure Committee adopt a charter specifically designed to ensure accurate public disclosure, and to annually disclose to the Company's stockholders the Audit Committee's report on its review of regulatory and compliance issues. These reforms, as well as others, guarantee that the Company will reap the long-term benefits of strong corporate governance, which in turn will help enhance investor confidence and improve returns over time as these changes take effect.

In reviewing a settlement for preliminary approval, courts only determine whether a settlement is within the range of what might be found to be fair, reasonable, and adequate. The Settlement here plainly meets this standard.  Accordingly, Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement set forth in the Stipulation; (2) approve the form

---

[5]     Counsel for Plaintiffs conferred with counsel for the Defendants. Defendants do not adopt all the arguments and positions taken in this Memorandum of Law, but they do not oppose the relief sought.

of the Notice and Summary Notice, and direct the publication and posting of them as described in the Stipulation; and (3) schedule a hearing to consider final approval of the Settlement (the "Settlement Hearing"), as well as hearing objections, if any, by Current Flowers Stockholders.

## OVERVIEW OF THE LITIGATION

### I.   Plaintiffs' and the Shareholder's Allegations

Flowers is the second-largest producer and marketer of packaged bakery foods in the United States.  Flowers operates through two segments: a direct-store-delivery segment (the "DSD Segment") and a warehouse delivery segment.   The Company's DSD Segment represents approximately 85% of the Company's total sales and operates through a network of 39 bakeries and "independent distributors" that sell the Company's products to retail and foodservice customers across the United States.

Plaintiffs and the Shareholder allege that Flowers relies heavily on an "Independent Distributor Model" to operate its DSD Segment.  In utilizing this model, Flowers classified its independent distributors as "independent contractors," and thus did not make certain benefit payments to the independent distributors that they may have received if they had been classified as employees.

Plaintiffs and the Shareholder also allege that, since July 2015, Flowers, among other things, knowingly misclassified workers as independent contractors in violation of the Fair Labor Standards Act ("FLSA"). Since then, Flowers has faced nearly two dozen lawsuits by distributors alleging they were misclassified as independent contractors rather than as employees, and Flowers was sued for violating federal securities laws in connection with the Company's disclosures surrounding its alleged misclassification in a securities action captioned *In re Flowers Foods, Inc. Securities Litigation*, Case No. 7:16-cv-00222-WLS (M.D. Ga.) (the "Securities Action").

## II.     Procedural History

### A.  The Federal Derivative Action

On September 28, 2016 and March 16, 2017, respectively, plaintiffs Goldberger and Wrigley each served separate litigation demand letters on the Board in accordance with Georgia law (Ga. Code § 14-2-742).  On November 30, 2016, Goldberger and Defendants entered into an agreement tolling the deadline for Defendants to respond to the demand until ninety (90) days following a ruling on the motion to dismiss in the Securities Action.  On May 2, 2016, Wrigley entered into a similar tolling agreement (the "Tolling Agreements").

On March 23, 2018, the Court denied the motion to dismiss the Securities Action. On June 8 and June 14, 2018, Wrigley and Goldberger filed verified shareholder derivative complaints in the U.S. District Court for the Middle District of Georgia, respectively.

On June 27, 2018, Wrigley, Goldberger, and Defendants jointly moved the Court for an order: (i) consolidating the actions; (ii) appointing Federman & Sherwood as lead counsel, Holzer & Holzer, LLC as liaison counsel, and Wrigley as lead plaintiff; and (iii) deferring the consolidated action pending a ruling on a motion for summary judgment in the Securities Action or notification of settlement of the Securities Action.  The Court issued an order granting that motion on June 27, 2018.

### B.   The State Derivative Action

Plaintiffs Garnier and the Trust each served litigation demand letters on the Board on May 24, 2018 and June 11, 2018, respectively, in accordance with Georgia law (Ga. Code. § 14-2-742).

On June 21, 2018, Garnier and the Trust each filed shareholder derivative actions in the Superior Court of Thomas County in the state of Georgia. On July 5, 2018, the Trust, Garnier, and Defendants jointly moved the court for an order: (i) consolidating the actions; (ii) appointing Pomerantz and Levi & Korsinsky as co-lead counsel, Ken Hodges Law as liaison counsel, and the

4

Trust and Garnier as lead plaintiffs; and (iii) deferring the consolidated action pending a ruling on a motion for summary judgment in the Securities Action or notification of settlement of the Securities Action.  The court issued an order granting that motion on July 12, 2018.

### C.    The Shareholder Demand

By letter dated June 1, 2018, the Shareholder sent a letter to the Board, demanding that the Company take certain actions.  Among other things, the Shareholder demanded that the Board commence a civil action against Defendants to redress their alleged breach of fiduciary duty. On August 15, 2018, Defendants responded, stating that the Company would address the demand in accordance with the process set forth in the deferral orders entered in the State and Federal Derivative Actions.   On April 3, 2019, the Company received a letter from the Shareholder requesting to inspect certain corporate books, records, and documents within the Company's possession, custody, and control for the period beginning on February 7, 2013 through the present in order to investigate the potential wrongdoing, mismanagement, and breaches of fiduciary duties described in the demand letter.

### D.  Settlement Negotiations

Consistent with the terms of the Tolling Agreements, beginning on August 16, 2018, Defendants produced to Plaintiffs and the Shareholder over 363,000 pages of internal Company documents that it produced in the Securities Action.

On March 15, 2019, Plaintiffs submitted a detailed and confidential settlement demand letter to Defendants outlining a proposed framework for settlement, which included detailed proposed corporate governance reforms.  On April 21, 2019, the Shareholder sent a detailed and confidential settlement demand letter to Defendants that also included proposed corporate governance reforms. Upon receipt of Plaintiffs' and Shareholder's settlement demands, the Settling Parties engaged in good faith, arm's-length negotiations.  This negotiation included two

full-day in-person mediations overseen by Robert A. Meyer of JAMS Mediation, Arbitration and ADR Services.  The first Mediation was held on April 29, 2019 in New York, New York.  Though the first Mediation did not result in a resolution to the Actions and the Shareholder Demand, the Settling Parties continued their negotiations throughout the following months. A second Mediation was held on September 13, 2019 in Los Angeles, California. After the principle terms of settlement were agreed to, the Settling Parties, with the assistance of Mr. Meyer, then negotiated the amount of Plaintiff's Counsel's attorneys' fees and reimbursement of expenses, subject to Court approval. The Settling Parties reached an agreement as to fees and reimbursement of expenses and executed a term sheet memorializing all of the principal terms of settlement.

## THE SETTLEMENT

As discussed above, the parties engaged in good-faith and protracted arm's-length negotiations with the assistance of an experienced mediator to resolve these Actions and the Shareholder Demand. Their diligence and extensive discussions culminated in the Stipulation, which was fully executed on October 28, 2019. Plaintiffs and the Shareholder believe the Stipulation provides meaningful corporate governance reforms that address the underlying corporate governance issues alleged in the Actions and that improve the Company's overall compliance capabilities.

Defendants acknowledge that the filing, prosecution, and resolution of the Actions and the Shareholder Demand were factors in Defendants agreeing, as part of the Settlement, to adopt the significant corporate governance reforms attached as Exhibit A to the Stipulation within 60 calendar days of the Court granting final approval. The Company has agreed to maintain the Reforms for a minimum of 4 years. The Reforms, detailed in Exhibit A to the Stipulation, include:

- **Regulatory Disclosure**: Flowers shall add a narrative to the proxy or annual report summarizing the consideration or review by the Audit Committee of regulatory issues during the relevant year.

- **Amendment of the Audit Committee Charter**: The Board shall approve and adopt an amendment to the Audit Committee's charter that specifically tasks the Audit Committee with oversight of the Company's compliance with the FSLA.

- **Disclosure Committee Chairman Report**: The Chairman of Flowers' Disclosure Committee shall report quarterly to the Audit Committee.

- **Disclosure Committee Charter**: The Disclosure Committee shall adopt a charter designed to prevent a recurrence of the alleged wrongdoing with respect to Company public disclosures.

- **Compensation Committee's Consultant and Presentation**: The Compensation Committee shall retain a consultant to review Flowers' existing clawback compensation policy and consider whether additional flexibility should be provided under that policy.  As part of this review, Plaintiffs' counsel in the Actions are entitled to provide a thirty (30) minute telephonic presentation to the consultant.

- **Officer and Director Education**: Flowers' outside counsel shall provide annual updates to the Board and Flowers' officers regarding applicable labor and franchise laws and regulations, including the FLSA.  The following executives shall also receive formal training every year regarding compliance with the FLSA: Chief Legal Counsel, Chief Operations Officer, Chief Sales Officer, Senior Vice President of DSD Sales, and Vice President of Distributor Enablement.

- **Confirmation of Officer Responsibilities for Corporate Compliance**: Ms. Stephanie B. Tillman currently serves as Flowers' Chief Compliance Officer and Deputy General Counsel. As of January 1, 2020, Ms. Tillman shall become Flowers' Chief Legal Officer. Beginning January 1, 2020, the functions and responsibilities of the Chief Compliance Officer shall be subsumed within the office of the Chief Legal Officer and, as a result, Ms. Tillman will continue to perform the functions and responsibilities of Chief Compliance Officer after 2019.

The Reforms embodied in the Stipulation directly address the alleged wrongdoing surrounding the Company's classification of independent contractors/employees and the Company's public statements concerning those classifications and are designed to prevent

recurrence of this type of alleged wrongdoing. As a result, Plaintiffs and the Shareholder believe that the terms of the Settlement are fair, reasonable, and adequate; do and will continue to benefit Flowers; and warrant preliminary approval of the Settlement.

## ARGUMENT

### I.       The Court Should Preliminarily Approve the Settlement.

It is well-settled that strong public policies favor the settlement of disputed claims, especially in complex class and shareholder derivative litigation. *Gumm v. Ford*, No. 5:15-CV-41 (MTT), 2019 WL 2017497, at *4 (M.D. Ga. May 7, 2019); *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1977). "[S]ettlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (explaining that, in representative actions, "there is an overriding public interest in favor of settlement," because such suits "have a well-deserved reputation as being most complex").

Pursuant to Fed. R. Civ. P. 23.1(c), the settlement of a derivative action requires the Court's approval. The procedure for the Court's review of a derivative settlement is well-established, with the "[t]he role of the court and the criteria to be considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in a class action." 7 Alba Conte & Herbert B. Newberg, Newberg on Class Actions §22.110 (4th ed. 2009); *cf. Sterling v. Stewart*, 158 F.3d 1199, 1203-04 (11th Cir. 1998).

First, the Court makes "a preliminary determination" on the fairness of the settlement, directs "the preparation of notice," and sets the date for a hearing on final approval. Manual for Complex Litigation (Fourth) § 21.632 (2004). Second, at the final approval stage, the Court decides whether the settlement is "fair, reasonable, and adequate." *Id.* at § 21.634; *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981).

8

At the preliminary approval stage, the standards are not as "stringent as those applied when the parties seek final approval." *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). To grant preliminary approval, the Court need only make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement. *In re Prudential Sec. Inc. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995). The sole issue before the Court is whether the Settlement falls within the range of what could be found to be fair, adequate, and reasonable, such that it would be appropriate to give notice to the shareholders and schedule a hearing to consider final approval of the Settlement. *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006).

Preliminary approval should be granted where, as here, the proposed settlement is the product of serious, informed, non-collusive negotiations; has no obvious substantive deficiencies; and falls within the range of possible approval in light of the benefits guaranteed by the settlement and the risks, cost and delays entailed in attempting to secure a better result through continued litigation. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Corrugated Container*, 643 F.2d at 205.

In reviewing a proposed settlement for approval, courts consider, *inter alia*, the following factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved."[6] *See*

---

[6]     As the notice of the Settlement has not yet been issued, the Court cannot yet consider the opposition, or lack thereof, to the Settlement.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Analysis of the Stipulation under these factors demonstrates that preliminary approval is warranted here.

### A.  The Settlement Confers Benefits and Falls Within the Range of Possible Approval

"Strong corporate governance is fundamental to the economic well-being and success of a corporation," and, accordingly, courts have long "recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies." *In re NVIDIA Corp. Derivative Litig*, Master File No. C-06-06110-SBA, 2009 U.S. Dist. LEXIS 24973, at *11-12 (N.D. Cal. Mar. 18, 2009); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) ("[A] corporation may receive a 'substantial benefit' from a derivative suit . . . ... regardless of whether the benefit is pecuniary in nature."); *Maher*, 714 F.2d at 454 (affirming settlement of derivative action where the lawsuit was a contributing factor in several beneficial changes to the company including the implementation of corporate governance reforms).

Courts approve settlements supported by consideration in the form of corporate governance reforms "specifically designed to minimize the probability of violations of fiduciary duties and federal securities laws." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005). Among other benefits, such reforms make it "far less likely [that the corporation will] become subject to long and costly securities litigation in the future, as well as prosecution or investigation by regulators and prosecutors." *Id*.; *see also In re Pfizer Inc., S'holder Derivative Litig*., 780 F. Supp. 2d 336, 342 (S.D.N.Y. 2011) (approving settlement of stockholder derivative action where the corporate benefits included "a significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have, in recent years, caused extensive harm to the company"); *Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603DMC, 2005 WL 2877899, at *2 (D.N.J. Oct. 28, 2005)

10

(non-monetary benefits support settlement where "the relief is intended to prevent future harm"). The Reforms guaranteed by the Settlement plainly confer this sort of benefit here.

As outlined above, the Settlement provides for corporate governance reforms that go to the heart of the alleged wrongdoing, will help prevent a recurrence of the alleged wrongdoing, and will ensure a better run corporation moving forward. For example, the Settlement provides for: (1) Flowers publicly disclosing the Audit Committee's report on its review of regulatory issues; (2) an amendment to the Audit Committee's charter to specifically task the Audit Committee with oversight of the Company's compliance with the FSLA; (3) the Chairman of Flowers' Disclosure Committee to report quarterly to the Audit Committee; (4) Flowers' Disclosure Committee to adopt a charter designed to prevent a recurrence of the alleged wrongdoing with respect to Company public disclosures; (5) a consultant to review Flowers' existing compensation clawback policy and consider whether additional flexibility should be provided under that policy; (6) Plaintiffs' counsel  to make a presentation to the consultant regarding the Company's clawback policy; and (7) annual formal training regarding compliance with the FLSA for certain of the Company's executive officers.

Taken together, the Reforms will help to ensure the Company's compliance with labor and employment laws and that the Company's public disclosures are timely, complete, and accurate—the two issues at the core of this litigation. The Settlement is an outstanding resolution for Flowers, and it positions the Company to reap the long-term benefits of strong corporate governance.

The Company has agreed to maintain these governance measures for a minimum of four (4) years, which is a sufficient amount of time to ensure that the Reforms become embedded in the Company's policies, practices, and corporate culture. Stip. ¶ 2.2 ; *see also*, *e.g.*, *Cohn*, 375 F. Supp. 2d at 850 (finding that corporate governance measures that must be in place for no less than three

years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

As such, the Settlement confers benefits on the Company and is fair, reasonable, and adequate, which weighs in favor of settlement approval.

### B. Plaintiffs and the Shareholder Faced a Real Risk of No Recovery Had They Continued to Litigate

An evaluation of the benefits of settlement must be tempered by recognition that any compromise involves concessions by all settling parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Here, the Settlement provides benefits to Flowers while eliminating numerous risks, costs, and burdens of litigation for all concerned, including the Company. *See Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986).

While the Actions settled before the filing of any motions to dismiss, Plaintiffs and the Shareholder have already performed significant discovery, having reviewed a substantial amount of key internal confidential Company documents that Defendants produced per the Tolling Agreements. Moreover, prior to bringing suit or sending the Shareholder Demand, Plaintiffs and the Shareholder conducted extensive investigations, including reviewing and analyzing: (1) public filings made by Flowers and other related parties and non-parties with the Securities and Exchange Commission; (2) press releases and other publications disseminated by certain Defendants and other related non-parties; (3) news articles, shareholder communications, and postings on Flowers' website concerning the Company's public statements; (4) publicly available filings in the Securities Action; and (5) other publicly available information concerning Flowers and Defendants.

12

As such, Plaintiffs and the Shareholder are well-positioned to weigh the strength and weaknesses of their Actions and the Shareholder Demand. Based on their analysis, Plaintiffs and the Shareholder have determined that they face a real risk of no recovery had they litigated further, as shareholder derivative litigation is "notoriously difficult and unpredictable" and the document discovery has not altered this framework. *Maher*, 714 F.2d at 455. Indeed, courts have noted that a derivative failure of oversight claim, such as those brought in this action, "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

Without settlement, Plaintiffs likely would have faced strong motions to dismiss by Defendants challenging the sufficiency of the allegations as to the merits of their claims, as well as allegations that the Board improperly rejected their litigation demand letters. If Plaintiffs defeated those motions, litigation would be extremely complex, costly, and of substantial duration. Further document discovery would need to be conducted, depositions would need to be taken, experts would need to be designated and expert discovery conducted. Defendants' expected motions for summary judgment would have to be briefed and argued and a trial would have to be held. Even if liability was established, the amount of recoverable damages would still have posed significant issues, as the Company is not paying the settlement amount in the Securities Action, but is causing its insurers to pay and thus, the Individual Defendants certainly would argue that the Company suffered no monetary harm due to the Individual Defendants' alleged wrongdoing.

Accordingly, balanced against the delays, costs, and particularly the risks of attempting to secure additional benefits through further litigation and trial, the benefits of the Settlement clearly fall within the range of possible approval as fair, reasonable, and adequate. *See Cotton*, 559 F.2d at 1332 (finding that based upon informal discovery and investigation, plaintiffs "achieved the

desired quantum of information necessary to achieve a settlement"); *Cohn*, 375 F. Supp. 2d at 855 ("[i]n assessing the Settlement, this Court must balance the benefits accorded to [the company] and its stockholders, and the immediacy and certainty of a substantial recovery for them, against the continuing risks of litigation").

### C. The Settlement Merits a Presumption of Fairness Because It Is the Product of Arm's-Length Negotiations by Experienced and Well-Informed Counsel

Significant weight should be afforded to the fact that the proposed Settlement was reached only after knowledgeable and experienced counsel for all parties determined that such a compromise promoted considerable and immediate benefits to the Company. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) ("a strong presumption of fairness" attaches to settlements negotiated at arm's-length by experienced counsel); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) (approving settlement and observing that "[s]ignificant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'"); Manual for Complex Litigation (Fourth) § 21.662 (2004) (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery" (citation omitted)).

Here, the Settlement was negotiated between and among experienced and sophisticated counsel and provides benefits to the Company while eliminating the expense, risk, and delay inherent in such complex litigation, including the very real risk of no recovery. The parties' negotiations included two full day in-person mediations overseen by Robert A. Meyer of JAMS Mediation, Arbitration and ADR Services.  The first Mediation was held on April 29, 2019, in New York, New York.  The second Mediation was held on September 13, 2019, in Los Angeles, California.  At the second mediation, the parties reached an agreement on all material terms of the

proposed Settlement. After reaching agreement on the principal terms of the Settlement, the Settling Parties, with the guidance of Mr. Meyer, discussed, and reached an agreement on, an appropriate fee and expense award, subject to Court approval. That the proposed negotiations that resulted in the Settlement was overseen by an experienced mediator further confirms that the settlement was the product of arm's-length negotiations by experienced and well-informed counsel and should be preliminary approved. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in…settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Griffith v. Providence Health & Servs.*, No. C14-1720-JCC, 2017 WL 1064392, at *4 (W.D. Wash. Mar. 21, 2017) ("The terms and provisions of the Settlement were entered into by experienced counsel and only after extensive, arm's-length negotiations conducted in good faith and with the assistance of an experienced third party mediator, Robert Meyer, Esq. The Settlement is not the result of collusion").

Significant weight also should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement. *See Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) (explaining that "the value of the assessment of able counsel negotiating at arm's length cannot be gainsaid"). Plaintiffs' counsel, Shareholder's counsel, and Defendants' counsel have tremendous experience in shareholder derivative litigation and, as a result, have unique insight into the legal and factual issues presented. *In re NeuStar, Inc. Sec. Litig.*, No. 1:14-cv-885 (JCC/TRJ), 2015 WL 8484438, at *4 (E.D. Va. Dec. 8, 2015) (stating that the court "may pay heed to [Plaintiffs'] Counsel's judgment in approving, negotiating, and entering into a putative settlement" where plaintiffs' counsel are "nationally recognized members of the securities litigation bar").

Accordingly, Plaintiffs and the Shareholder, and Defendants, by and through their counsel, negotiated the settled at arm's-length and have independently considered the Settlement and all agree that it is in the best interest of Flowers. This weighs in favor of settlement approval.

*     *     *

For the above reasons, the proposed Settlement deserves the Court's preliminary – and ultimately – final approval. The proposed Settlement confers benefits and falls well within the range of possible approval considering the real risks and expenses associated with further litigation.

## II.     The Proposed Form and Means of Notice Meet Due Process Standards

Rule 23.1(c) requires that the notice of a proposed stockholder derivative settlement be given to stockholders "in the manner that court orders." Notice in a derivative action must meet the due process requirement of being "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950). In contrast with class actions, Fed. R. Civ. P. 23.1(c) does not require individual notice of a shareholder derivative settlement because no individual claims are at stake, and a direct notice program would be so costly as to swallow up the benefits of many derivative settlements. As such, notice of derivative settlements under Rule 23.1 by publication only is appropriate. *See Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 323 (E.D. Pa. 1993) ("notice by publication may be the principal means for informing [shareholders] of their ... rights").

The Stipulation provides for publication of: (1) the Stipulation and the Notice, as set forth in Exhibit C to the Stipulation, on an Internet page accessible via a link on the "Investor Relations" page of Flowers' website; and (2) the Summary Notice, as set forth in Exhibit D to the Stipulation, to be published one time in *Investor's Business Daily* online edition. This method of publication

16

has been found by this Court to be sufficient to ensure adequate notice to shareholders. *See LR Trust v. Rogers*, Case No. 1:16-cv-4132 (M.D. Ga. Sept. 18, 2018) (approving notice of derivative settlement consisting of, *inter alia*, posting a summary notice in *Investor's Business Daily* and notice on the company's website). Federman Decl. at Exhibit 2.

The proposed substance of the Notices is also sufficient. The Notices provide information relating to: (i) the Settlement terms; (ii) the date of the Settlement Hearing; and (iii) the steps Current Flowers Stockholders need to follow to comment upon or object to any aspect of the proposed Settlement. This ensures Current Flowers Stockholders will have the opportunity to be heard about the sufficiency of the Settlement, if they so choose.

Accordingly, the form and manner of the proposed Notice to Current Flowers Stockholders constitutes the best notice practicable under the circumstances and satisfies the requirements of Rule 23.1, due process, and any other applicable law.

## PROPOSED SCHEDULE OF EVENTS

The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| EVENT | TIMING |
|---|---|
| Deadline for posting the Notice on Flowers' website and publishing the Summary Notice once in *Investor's Business Daily* | Within seven (7) business days after the Court enters the Preliminary Approval Order |
| Deadline for filing of papers in support of the final approval of Settlement | At least thirty-five (35) calendar days prior to the Settlement Hearing |
| Deadline that any objections to the Settlement must be filed with the Court | No later than twenty-one (21) calendar days prior to the Settlement Hearing |
| Filing proof, by affidavit or declaration, of dissemination of the Notice and Summary Notice of proposed Settlement | At least twenty-one (21) calendar days prior to the Settlement Hearing |

17

| Deadline for filing of any response to objections, if any, and/or in further support of Settlement by Current Flowers Stockholders | At least seven (7) calendar days prior to the Settlement Hearing |
|---|---|
| Settlement Hearing date | At least forty-five (45) calendar days after the Notice is issued |

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement set forth in the Stipulation; (2) approve the form of the Notice and Summary Notice and direct the publication and posting of them as described in the Stipulation; and (3) schedule the Settlement Hearing.

Respectfully submitted,

Dated:  October 28, 2019

_____
Corey D. Holzer
Georgia Bar # 364698
**HOLZER & HOLZER, LLC**
1200 Ashford Parkway, Suite 410
Atlanta, GA 30338
Phone: (770) 392-0090; Fax: (770) 392-0029
cholzer@holzerlaw.com


**FEDERMAN & SHERWOOD**
William B. Federman
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com

*Lead Counsel in the Federal Derivative Action*


**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
22 Cassatt Ave., Suite 100
Berwyn, Pennsylvania 19312

18

Phone: (610) 225-2677
Fax: (610) 408-8062
rw@weiserlawfirm.com

*Counsel for Plaintiff Goldberger*

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies that on October 28, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this matter.

Dated: October 28, 2019

       *s/ Corey D. Holzer*
Corey D. Holzer
Georgia Bar # 364698
**HOLZER & HOLZER, LLC**
1200 Ashford Parkway, Suite 410
Atlanta, GA 30338
Phone: (770) 392-0090; Fax: (770) 392-0029
cholzer@holzerlaw.com