# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| IN RE: FLOWERS FOODS INC. DERIVATIVE LITIGATION | ) ) ) ) Master File No.: 7:18-cv-00084-WLS |
| This Document Relates To: ALL ACTIONS. | ) ) ) ) ) |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation"), dated October 28, 2019, is made and entered into by and among the following Settling Parties (as defined herein)[1], each by and through their respective counsel: (1) plaintiffs to the Federal Derivative Action (William D. Wrigley ("Wrigley") and Stephen Goldberger ("Goldberger")); (2) plaintiffs in the State Derivative Action (the Margaret Cicchini Family Trust (the "Trust") and Frank Garnier ("Garnier")); (3) the Shareholder Janet Lovette; (4) the Individual Defendants (George E. Deese, Allen L. Shiver, R. Steven Kinsey, Karyl H. Lauder, Bradley K. Alexander, Rhonda O. Gass, Benjamin H. Griswold, IV, Richard A. Lan, Margaret G. Lewis, Amos R. McMullian, Joseph Vincent Shields, Jr., David V. Singer, James T. Spear, Melvin T. Stith, and C. Martin Wood, III); and (5) nominal defendant Flowers Foods, Inc.

This Stipulation, subject to the approval of the U.S. District Court for the Middle District of Georgia, is intended by the Settling Parties fully, finally, and forever to compromise, resolve, discharge, and settle the Released Claims and to result in the complete dismissal of the Federal Derivative Action and the State Derivative Action *with prejudice* and the satisfaction of the

---

[1] Capitalized terms (with a few exceptions) are defined in Section IV(1).

Shareholder Demand, upon the terms and subject to the conditions set forth herein, and without any admission or concession as to the merits of any of the Settling Parties' claims or defenses.

## I.    INTRODUCTION

### A.  Factual Background

According to its public filings, Flowers is the second-largest producer and marketer of packaged bakery foods in the United States.  Flowers operates through two segments: a direct-store-delivery segment (the "DSD Segment") and a warehouse delivery segment.  The Company's DSD Segment represents approximately 85% of total sales and operates through a network of 39 bakeries and "independent distributors" that sell the Company's products to retail and foodservice customers across the United States.

According to the allegations in the Actions and the Shareholder Demand, Flowers relies heavily on an "Independent Distributor Model" to operate its DSD Segment.  In utilizing this model, Flowers has classified, and continues to classify, its independent distributors as "independent contractors," and thus the Company has not made certain benefit payments to the independent distributors that they may have received if they had been classified as employees.

The Plaintiffs and the Shareholder allege that, since July 2015, Flowers has faced nearly two dozen lawsuits by distributors alleging they were misclassified as independent contractors rather than as employees.  The Plaintiffs and the Shareholder (collectively) further assert that the Individual Defendants and certain Additional Identified Persons knowingly misclassified workers as independent contractors in violation of the Fair Labor Standards Act.

Specifically, the Plaintiffs and the Shareholder (collectively) claim, among other things, that the Individual Defendants and certain Additional Identified Persons breached their fiduciary duties.

Defendants deny the allegations in the Actions and the Shareholder Demand.

### B.  Procedural Background

#### 1.  The Federal Derivative Action

In accordance with Georgia law (O.C.G.A. § 14-2-742), on September 28, 2016 and March 16, 2017, respectively, plaintiffs Goldberger and Wrigley each served separate litigation demand letters on the Flowers Board of Directors.  On November 30, 2016, counsel for Goldberger entered into an agreement with counsel for Defendants tolling the deadline for Defendants to respond to the demand under O.C.G.A. § 14-2-742 until ninety (90) days following a ruling on the motion to dismiss in the related securities class action captioned *In re Flowers Foods, Inc. Securities Litigation*, Case No. 7:16-cv-00222-WLS (M.D. Ga.) (the "Securities Action").  On May 2, 2016, counsel for Wrigley entered into a similar tolling agreement (the "Tolling Agreements").

The Court denied the motion to dismiss the Securities Action on March 23, 2018.  Thereafter, Wrigley and Goldberger each filed verified shareholder derivative complaints in the U.S. District Court for the Middle District of Georgia on June 8, 2018 and June 14, 2018, respectively.

On June 22, 2018, Wrigley, Goldberger, and Defendants jointly moved the Court for an order: (i) consolidating the actions; (ii) appointing Federman & Sherwood as lead counsel, Holzer & Holzer, LLC as Liaison Counsel, and Wrigley as lead plaintiff; and (iii) deferring the consolidated action pending a ruling on a motion for summary judgment in the Securities Action or notification of settlement of the Securities Action.  The Court issued the order granting that motion on June 27, 2018.

### 2.  The State Derivative Action

In accordance with Georgia law (O.C.G.A. § 14-2-742), plaintiffs Garnier and the Trust each served litigation demand letters on the Board on May 24, 2018 and June 11, 2018, respectively.

On June 21, 2018, the Trust and Garnier both filed individual shareholder derivative actions against the Individual Defendants in the Superior Court of Thomas County in the state of Georgia. The Board had not responded to either of the litigation demand letters.  On July 5, 2018, the Trust, Garnier, and Defendants jointly moved the court for an order: (i) consolidating the actions; (ii) appointing Pomerantz and Levi & Korsinsky as co-lead counsel, Ken Hodges Law as liaison counsel, and the Trust and Garnier as lead plaintiffs; and (iii) deferring the consolidated action pending a ruling on a motion for summary judgment in the Securities Action or notification of settlement of the Securities Action.  The court issued the order on July 12, 2018.

### 3.  The Shareholder Demand

By letter dated June 1, 2018, the Shareholder's Counsel stated that Shareholder was a Flowers shareholder, made certain demands upon the Defendants, and threatened to bring suit derivatively on behalf of Flowers.  The June 1, 2018 letter, among other things, demanded that the Board commence a civil action against Defendants to redress their alleged breach of fiduciary duty. Defendants' Counsel responded to the June 1, 2018 letter on August 15, 2018 and stated that the Company would address the demand in accordance with the process set forth in the deferral orders entered in the State and Federal Derivative Actions.  On April 3, 2019, the Company received a letter from the Shareholder requesting to inspect certain corporate books, records, and documents within the Company's possession, custody, and control for the period beginning on February 7, 2013 through the present in order to investigate the potential wrongdoing, mismanagement, and breaches of fiduciary duties described in the demand letter.

### 4. Settlement Negotiations

Consistent with the terms of the Tolling Agreements, beginning on August 16, 2018, Defendants produced to Plaintiffs' Counsel and Shareholder's Counsel over 363,000 pages of internal Company documents that it produced in the Securities Action, as well as transcripts of depositions taken in the Securities Action.

On March 15, 2019, Plaintiffs' Counsel submitted a detailed and confidential settlement demand letter to Defendants' Counsel outlining a proposed framework for settlement, which included, *inter alia*, detailed proposed corporate governance reforms.  On April 21, 2019, Shareholder's Counsel sent a detailed and confidential settlement demand letter to Defendants' Counsel that also included proposed corporate governance reforms. Upon receipt of Plaintiffs' and Shareholder's settlement demands, the Settling Parties engaged in good faith, arm's-length negotiations.  This negotiation included two full day in-person mediations (the "Mediations") overseen by Robert A. Meyer of JAMS Mediation, Arbitration and ADR Services.  The first Mediation was held on April 29, 2019 in New York, New York.  Though the first Mediation did not result in a resolution to the Actions and the Shareholder Demand, the Settling Parties continued their negotiations throughout the following months.  A second Mediation was held on September 13, 2019 in Los Angeles, California.  At the conclusion of this Mediation, the Settling Parties reached an agreement on all material terms of the Settlement and executed a term sheet to that effect.

## II.  PLAINTIFFS' COUNSELS' AND SHAREHOLDER'S COUNSEL'S INVESTIGATION AND RESEARCH, PLAINTIFFS' CLAIMS, AND THE BENEFIT OF SETTLEMENT

Plaintiffs' Counsel and Shareholder's Counsel asserts that they conducted an investigation relating to the claims and the underlying events alleged in the respective Actions and the Shareholder Demand to which their clients are parties, including, but not limited to: (i) reviewing

and analyzing the Company's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (ii) reviewing and analyzing the investigations in publicly-available pleadings against the Company related to the allegations in the Actions and the Shareholder Demand; (iii) reviewing and analyzing the allegations contained in the related Securities Class Action; (iv) researching, drafting, and serving the shareholder demands; (v) researching, drafting, and filing shareholder derivative complaints; (vi) reviewing the 363,000 pages of internal corporate documents and deposition transcripts produced to Plaintiffs and Shareholder by Flowers in connection with settlement negotiations; (vii) researching the applicable law with respect to the claims asserted (or which could be asserted) in the Actions and the Shareholder Demand and the potential defenses thereto; (viii) researching corporate governance issues; (ix) the preparation and submission of detailed settlement demands and mediation statements in connection with the Mediations; (x) attending two in-person, full-day Mediations in both New York, New York and Los Angeles, California; and (xi) engaging in extensive settlement discussions with the Mediator and counsel for the Defendants.

Plaintiffs' Counsel and Shareholder's Counsel believe that the claims asserted in the Actions and the Shareholder Demand have merit and that their investigation supports the claims asserted. Without conceding the merit of any of Defendants' defenses or the lack of merit of any of their own allegations, and in light of the benefits of the settlement as well as to avoid the potentially protracted time, expense, and uncertainty associated with continued litigation, including potential trials and appeals, Plaintiffs and Shareholder have concluded that it is desirable that the Actions and the Shareholder Demand be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Plaintiffs, Shareholder, Plaintiffs' Counsel, and Shareholder's Counsel recognize the significant risk, expense, and length of continued

proceedings necessary to prosecute the Actions and the Shareholder Demand against the Individual Defendants through trials and possible appeals.  Plaintiffs' Counsel and Shareholder's Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially complex litigation such as the Actions and litigation contemplated by the Shareholder Demand, as well as the difficulties and delays inherent in such litigation.  Based on their evaluation, and in light of the benefits conferred upon the Company and its shareholders as a result of the Settlement, Plaintiffs, Shareholder, Plaintiffs' Counsel, and Shareholder's Counsel have determined that the Settlement is in the best interests of Plaintiffs, Shareholder, Flowers, and the Current Flowers Stockholders, and have agreed to settle the Actions and the Shareholder Demand upon the terms and subject to the conditions set forth herein.  Further, the Board, in its business judgment, approves the Settlement, and each of its terms, as fair, just, and adequate, and in the best interests of Flowers and the Current Flowers Stockholders.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Individual Defendants have denied, and continue to deny, each and every claim and contention alleged by Plaintiffs in the Actions and Shareholder in the Shareholder Demand.  The Individual Defendants affirm that they have acted properly, lawfully, and in full accord with their fiduciary duties at all times.  Further, the Individual Defendants have denied expressly, and continue to deny, all allegations of wrongdoing, fault, liability, or damage against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Actions or the Shareholder Demand.  The Individual Defendants deny that they have ever committed or attempted to commit any violations of law, any breach of fiduciary duty owed to Flowers or its shareholders, or any wrongdoing whatsoever.  Had the terms of this Stipulation not been reached, the Individual Defendants would have continued to contest vigorously Plaintiffs' and Shareholder's allegations, and the Individual Defendants maintain that they had and have

meritorious defenses to all claims alleged in the Actions and the Shareholder Demand.  Without admitting the validity of any of the claims that Plaintiffs and Shareholder have asserted in the Actions and the Shareholder Demand, or any liability with respect thereto, Defendants have concluded that it is desirable that the claims be settled on the terms and subject to the conditions set forth herein.  Defendants are entering into this Settlement because it will eliminate the uncertainty, distraction, disruption, burden, and expense of further litigation of the Actions and the Shareholder Demand.  Neither this Stipulation, nor any of its terms or provisions, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is, may be construed as, or may be used as, an admission of, or evidence of, the truth or validity of (i) any of the Released Claims, (ii) any claims or allegations made in the Actions or the Shareholder Demand, or (iii) any purported acts or omissions by the Defendants; (b) is, may be construed as, or may be used as, an admission of, or evidence of, (i) any fault, omission, negligence, or wrongdoing by the Defendants, or (ii) any concession of liability whatsoever; or (c) is, may be construed as, or may be used as, an admission of, or evidence of, a concession by any Defendant of any infirmity in the defenses that Defendants asserted or could have asserted in these Actions, the Shareholder Demand, or otherwise.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

Plaintiffs and Shareholder (for themselves and derivatively on behalf of Flowers), the Individual Defendants, and nominal defendant Flowers, by and through their respective counsel or attorneys of record, hereby stipulate and agree that, subject to approval by the Court, in consideration of the benefits flowing to the Settling Parties hereto, the Actions, the Shareholder Demand, and all of the Released Claims shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, upon the terms and subject to the conditions set forth herein as follows:

1. **Definitions**

As used in this Stipulation, the following terms have the meanings specified below.  In the event of any inconsistency between any definition set forth below and any definition set forth in any document in the form of the exhibits to this Stipulation, the definition set forth below shall control.

1.1 "Actions" means: (i) the Federal Derivative Action and (ii) the State Derivative Action.

1.2 "Additional Identified Persons" means the Persons described in the five demand letters (identified above) as having potentially engaged in wrongdoing but who were not also named as defendants in the Actions, including without limitation Joe E. Beverly and Tonja W. Taylor.

1.3 "Board" means the Flowers Board of Directors.

1.4 "Court" refers to the United States District Court for the Middle District of Georgia.

1.5 "Current Flowers Stockholders" means any Person who holds Flowers Foods, Inc. stock as of the date of this Stipulation.

1.6 "Defendants" means, collectively, the Individual Defendants and nominal defendant Flowers.

1.7 "Defendants' Counsel" means Jones Day.

1.8 "Derivative Plaintiffs" means plaintiffs in the Federal Derivative Action and the State Derivative Action.

1.9 "District Court Approval Order" means the order approving the Settlement and dismissal of the Federal Derivative Action with prejudice.  The Settling Parties agree to file a proposed District Court Approval Order substantially in the form attached hereto as Exhibit E.

1.10   "Effective Date" means the first date by which all of the events and conditions specified in ¶6.1 herein have been met and have occurred.

1.11   "Federal Derivative Action" means, *In re Flowers Foods, Inc. Derivative Litigation*, Master File No. 7:18-cv-00084-WLS pending in the U.S. District Court for the Middle District of Georgia.

1.12   "Fee Award" means the terms of the sum to be paid to Plaintiffs' Counsel and Shareholder's Counsel for their attorneys' fees and expenses, as detailed in ¶¶5.1, *et seq.* of this Stipulation, subject to approval by the Court.

1.13   "Final" means the time when the Judgment (which has not been reversed, vacated, or modified in any way) is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process (including potential writ proceedings) or because of passage, without action, of time for seeking appellate or writ review.  More specifically, it is that situation when (a) either no appeal (or petition for review by writ) has been filed and the time has passed for any notice of appeal (or writ petition) to be timely filed; or (b) an appeal has been filed and the court of appeals has either affirmed the Judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (c) a higher court has granted further appellate review and that court has either affirmed the Judgment or affirmed the court of appeals' decision affirming the Judgment or dismissing the appeal or writ proceeding.  Any appeal or proceeding seeking judicial review pertaining solely to the Fee Award shall not in any way delay or affect the time set forth above for the Judgment to become Final.

1.14    "Flowers" or the "Company" means nominal defendant Flowers Foods, Inc., and includes all of its subsidiaries, predecessors, successors, affiliates, officers, directors, employees, and agents.

1.15    "Individual Defendants" means collectively George E. Deese, Allen L. Shiver, R. Steven Kinsey, Karyl H. Lauder, Bradley K. Alexander, Rhonda O. Gass, Benjamin H. Griswold, IV, Richard A. Lan, Margaret G. Lewis, Amos R. McMullian, Joseph Vincent Shields, Jr., David V. Singer, James T. Spear, Melvin T. Stith, and C. Martin Wood, III.

1.16    "Judgment" means the judgment to be entered by the Court, substantially in the form attached hereto as Exhibit F.

1.17    "Mediator" means Robert A. Meyer of JAMS Mediation, Arbitration and ADR Services.

1.18    "Notice to Current Flowers Stockholders" or "Notice" means the Notice of Proposed Derivative Settlement, substantially in the form of Exhibit C attached hereto.

1.19    "Person(s)" means an individual, corporation, limited liability company, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their spouses, heirs, predecessors, successors, administrators, parents, subsidiaries, affiliates, representatives, or assignees.

1.20    "Plaintiff(s)" means, collectively, Derivative Plaintiffs William D. Wrigley, Stephen Goldberger, the Margaret Cicchini Family Trust, and Frank Garnier.

1.21    "Plaintiffs' Counsel" means: (i) Federman & Sherwood, 10205 N. Pennsylvania Avenue, Oklahoma City, OK, 73120; (ii) The Weiser Law Firm, P.C., 22 Cassatt Ave, Berwyn, PA 19312; (iii) Holzer & Holzer LLC, 200 Ashford Center North, Suite 300, Atlanta, GA 30338; (iv) Pomerantz, LLP, 600 Third Avenue, New York, NY 10016; (v) Levi & Korsinsky, LLP, 55 Broadway, 10th Floor, New York, NY 10006; and (vi) Law Office of David A. Bain, LLC, 1230 Peachtree Street, NE, Suite 1050, Atlanta, GA 30309.

1.22    "Preliminary Approval Order" means the Order to be entered by the Court, substantially in the form of Exhibit B attached hereto, preliminarily approving the terms and conditions of the Settlement as set forth in this Stipulation, directing that Notice be provided to Current Flowers Stockholders, and scheduling a Settlement Hearing to consider whether the Stipulation and Fee Award should be finally approved.

1.23    "Related Person(s)" means each of a Person's past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, divisions, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person

or entity acting or purporting to act for or on behalf of any Person, and each of their respective predecessors, successors, and assigns.

1.24    "Released Claim(s)" means collectively all claims (including Unknown Claims), demands, debts, losses, damages, duties, rights, disputes, actions, causes of action, liabilities, obligations, judgments, suits, matters, controversies, proceedings, or issues, of any kind, nature, character, or description whatsoever (and including, but not limited to, any claims for damages, whether compensatory, consequential, special, punitive, exemplary, or otherwise, and any and all fees, costs, interest, expenses, or charges), whether known or unknown, contingent or absolute, suspected or unsuspected, foreseen or unforeseen, disclosed or undisclosed, concealed or hidden, apparent or not apparent, accrued or unaccrued, matured or unmatured, liquidated or not liquidated, asserted or unasserted, at law or in equity, that have been asserted, could have been asserted, or in the future could be asserted against any Released Persons in the Shareholder Demand, the Actions, or in any other court, tribunal, forum, or proceeding, based upon, arising from, or in any way related to the transactions or occurrences referenced in the Actions and the Shareholder Demand (including without limitation claims of fraud, breach of any duty, negligence, gross negligence, mismanagement, gross mismanagement, corporate waste, abuse of control, unjust enrichment, disgorgement, recoupment, contribution, indemnification, and violations of federal securities laws, whether individual, class, direct, derivative, representative, legal, equitable, or any other type, and arising under United States federal, state or local law, foreign law, common law, statutory law, administrative law, rule, regulation, or at equity).

1.25   "Released Person(s)" means collectively each and all of (i) the Defendants; (ii) the Additional Identified Persons; (iii) the Defendants' Related Persons; and (iv) the Additional Identified Persons' Related Persons.

1.26   "Releasing Person(s)" means Plaintiffs and Shareholder (for themselves and derivatively on behalf of Flowers), Current Flowers Stockholders, and each of Plaintiffs', Shareholder's, and Current Flowers Stockholders' Related Persons.

1.27   "Settling Parties" means, collectively, Plaintiffs and Shareholder (on behalf of themselves and derivatively on behalf of Flowers), Individual Defendants, and nominal defendant Flowers.

1.28   "Settlement" means the settlement of the Actions and the Shareholder Demand as documented in this Stipulation.

1.29   "Settlement Hearing" means a hearing by the Court to review the adequacy, fairness, and reasonableness of the Settlement set forth in this Stipulation and to determine: (i) whether to enter the Judgment; and (ii) all other matters properly before the Court.

1.30   "Shareholder" means Janet Lovette.

1.31   "Shareholder's Counsel" means: (1) The Brown Law Firm, P.C., 240 Townsend Square, Oyster Bay, NY 11771; and (2) The Rosen Law Firm, P.A., 275 Madison Avenue, 40th Floor, New York, NY 10016.

1.32   "Shareholder Demand" means the litigation demand letter sent by the Shareholder on June 1, 2018 and the document request made by the Shareholder on April 3, 2019.

1.33   "State Court" means the Superior Court of Thomas County, Georgia.

1.34    "State Derivative Action" means the consolidated shareholder derivative action pending in the Superior Court of Thomas County, Georgia, captioned *In re Flowers Foods, Inc. Derivative Litigation*, Master File No. SUCV2018000405.

1.35    "State Plaintiffs" means the Margaret Cicchini Family Trust and Frank Garnier.

1.36    "Stipulation" means this Stipulation and Agreement of Settlement, dated October 28, 2019.

1.37    "Summary Notice" means the Summary Notice of Proposed Derivative Settlement, substantially in the form of Exhibit D attached hereto.

1.38    "Unknown Claims" means any claim a Person does not know or suspect to exist in his, her, or its favor at the time of the releases provided for herein, including claims which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Persons released as described herein, or might have affected his, her, or its decision not to object to this Settlement.  With respect to any and all released claims, the Settling Parties stipulate and agree that, upon the Effective Date, the releasing Persons shall expressly waive, and shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive, and the releasing Persons shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any United States federal law or any law of any state or territory of the United States, or principle of common law

or foreign law, which is similar, comparable, or equivalent in effect to California Civil Code § 1542. The Settling Parties acknowledge that they may discover facts in addition to or different from those now known or believed to be true by them with respect to the released claims, but it is the intention of the Settling Parties completely, fully, finally, and forever to compromise, settle, release, discharge, and extinguish any and all of the released claims, known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. The Settling Parties acknowledge, and the releasing Persons shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and was a material element of the Settlement.

**2.  Terms of the Settlement**

2.1     The benefits of the Settlement consist of corporate governance reforms (the "Reforms") and a confirmation of certain officer responsibilities, the terms of which are fully set forth in in Exhibit A attached hereto.  The Settling Parties agree that the Actions and the Shareholder Demand were factors in the Company's adoption of the Reforms.

2.2     Within sixty (60) calendar days following the Court's entry of the District Court Approval Order and the Judgment, Flowers shall take the necessary steps to adopt and implement the Reforms, to the extent that such Reforms have not already been adopted and implemented. Except where specified otherwise, the Reforms shall be maintained for a period of no less than four (4) years from the date of implementation, except for modifications required by applicable law, regulation, or technological advancements, subject to the terms and conditions set forth in Exhibit A attached hereto.

16

### 3.  **Procedure for Implementing the Settlement**

3.1     Within five (5) business days after the execution of this Stipulation,  Plaintiffs in the Federal Derivative Action shall submit this Stipulation, together with its exhibits, to the Court and apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit B attached hereto, requesting, *inter alia*: (i) preliminary approval of the Settlement set forth in this Stipulation; (ii) approval of the method of providing notice of the proposed Settlement to Current Flowers Stockholders; (iii) approval of the form of Notice attached hereto as Exhibit C and the Summary Notice attached hereto as Exhibit D; and (iv) a date for the Settlement Hearing.

3.2     Within five (5) business days after the filing of this Stipulation with the Court, the Plaintiffs in the State Derivative Action shall notify the State Court of the pendency of the Settlement, attaching a courtesy copy of this Stipulation and its exhibits and informing the State Court that: (i) the State Plaintiffs are parties to the Settlement, which if finally approved, would result in the dismissal of the State Derivative Action *with prejudice*; (ii) this Stipulation, a motion for preliminary approval of the Settlement, and proposed notices to Current Flowers Stockholders have been filed with the Court in the Federal Derivative Action; and (iii) within five (5) business days after the date that the Judgment becomes Final, the State Plaintiffs will file papers for voluntary dismissal of the State Derivative Action *with prejudice*.  The Settling Parties agree to cooperate to accomplish the terms as set forth herein.

3.3     Within seven (7) business days after the Court's entry of the Preliminary Approval Order, Flowers shall: (i) cause the Summary Notice to be published one time in *Investor's Business Daily* online edition; and (ii) publish this Stipulation and the Notice on an Internet page, which is accessible via a link on the "Investor Relations" page of Flowers' website, the address of which will be contained in the Notice and which posting shall be maintained through the date of the Settlement Hearing.  All costs of such Notice and the publishing and posting set forth above, and

any other reasonable notice as may be required by the Court, shall be paid by Flowers and/or its insurers.  The Settling Parties believe the content of the Notice, the Summary Notice, and the manner of the notice procedures set forth in this paragraph constitutes adequate and reasonable notice to Current Flowers Stockholders pursuant to applicable law and due process.

3.4.   Counsel for plaintiffs in the Federal Derivative Action shall request that the Court hold the Settlement Hearing to approve the Settlement and the Fee Award at least forty-five (45) calendar days after the Notice described in ¶3.3 above is given.

3.5   Pending the Court's determination as to final approval of the Settlement, Plaintiffs, Shareholder, Plaintiffs' Counsel, Shareholder's Counsel, and all other Persons are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Claim against any of the Released Persons.

3.6   Within five (5) business days after the date the Judgment becomes Final, State Plaintiffs shall file the necessary documents for voluntary dismissal of the State Derivative Action *with prejudice* in accordance with local rules.   The Settling Parties agree to cooperate to accomplish the terms as set forth herein.

## 4.   **Releases**

4.1   Upon the Effective Date, the Releasing Persons (on behalf of themselves and derivatively on behalf of Flowers) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Persons from the Released Claims.  The Releasing Persons shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any Released Person with respect to any Released Claims, and shall be permanently barred and enjoined from initiating, instituting, commencing, maintaining, or prosecuting any of the Released Claims against any of the Released Persons.  Upon

final approval of the Settlement, the Releasing Persons shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of any state, federal, or foreign law, or principle of common law, which may have the effect of limiting the foregoing release.  The foregoing release shall include a release of Unknown Claims.

4.2     Upon the Effective Date, Defendants and each of the other Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, Shareholder, Plaintiffs' Counsel, and Shareholder's Counsel from all claims, sanctions, actions, liabilities, or damages arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Actions, the Shareholder Demand, or the Released Claims.  The foregoing release shall include a release of Unknown Claims.

4.3     Notwithstanding ¶¶ 4.1 through 4.2 above, nothing in the Stipulation or the Judgment shall provide a release of any claims to enforce this Stipulation, the Settlement, or the Judgment or bar any action by any Settling Party to enforce the terms of the Stipulation, the Settlement, or the Judgment.  In addition, nothing in ¶¶ 4.1 through 4.2 above is intended to release any rights to indemnification, insurance coverage, or advancement of expenses that any Released Person has or may have under any insurance policy, contract, bylaw, or charter provision, or under Georgia law, including, but not limited to, any rights any Released Person has or may have related to any pending or threatened civil or government proceedings.

5.     **Plaintiffs' Counsel's and Shareholder's Counsel's Attorneys' Fees and Expenses**

5.1     In recognition of the benefits provided to Flowers and the Current Flowers Stockholders as a result of the settlement of the Actions and the Shareholder Demand, Flowers has agreed to cause its directors' and officers' liability insurer to pay to Plaintiffs' Counsel and

Shareholder's Counsel an award of attorneys' fees and expenses in the total amount of $1.3 million ($1,300,000.00) (the "Fee Award"), subject to approval by the Court.  The Settling Parties mutually agree that the Fee Award is fair and reasonable in light of the benefits conferred upon Flowers and the Current Flowers Stockholders by this Settlement.

 5.2 The Fee Award shall be transferred to an interest-bearing escrow account (the "Escrow Account") held by Federman & Sherwood, as receiving agent for all Plaintiffs' Counsel and Shareholder's Counsel within the later of ten (10) calendar days after (a) entry of the Preliminary Approval Order by the Court or (b) receipt by Defendants' Counsel and Defendants' insurer of the appropriate payment instructions and the W-9.  Defendants, Defendants' Counsel, and Defendants' insurer shall have no responsibility for, nor bear any risk or liability with respect to, the Escrow Account, its operation, and any taxes or expenses incurred in connection with the Escrow Account.  Plaintiffs' Counsel and Shareholder's Counsel shall be solely responsible for any administrative costs associated with the Escrow Account as well as the filing of all informational and other tax returns with the Internal Revenue Service, or any other state or local taxing authority, as may be necessary or appropriate.

 5.3 The Fee Award shall remain in the Escrow Account until the entry of the District Court Approval Order by the Court finally approving the Settlement, at which time the Fee Award shall be immediately releasable to Plaintiffs' Counsel and Shareholder's Counsel.  Should the Court order the payment of attorneys' fees and expenses in an amount less than the agreed Fee Award, then only the Court-approved amount, plus interest earned thereon, shall be released to Plaintiffs' Counsel and Shareholder's Counsel from the Escrow Account, and all remaining amounts shall be returned to Flowers within fifteen (15) business days of the entry of the District Court Approval Order.

5.4     Payment of the Fee Award shall constitute final and complete payment for all of Plaintiffs', Shareholder's, Plaintiffs' Counsel's, and Shareholder's Counsel's attorneys' fees and expenses in connection with the Actions, any demands in any way relating to the transactions and occurrences referenced in the Actions, the Shareholder Demand, and the Settlement.  Federman & Sherwood shall be solely responsible for the distribution of the Fee Award to Plaintiffs' Counsel and Shareholder's Counsel.  Defendants, Defendants' Counsel, and Defendants' insurer shall have no responsibility for the allocation or distribution of the Fee Award amongst Plaintiffs' Counsel and Shareholder's Counsel.  Defendants, including Defendants' insurer, shall have no obligation to make any payment to Plaintiffs, Shareholder, Plaintiffs' Counsel, or Shareholder's Counsel other than the payment to the Escrow Account by Defendants' insurer provided in ¶¶5.1-5.2 herein.

5.5     If for any reason any condition in ¶6.1 is not met and the Effective Date of the Stipulation does not occur, if the Stipulation is in any way canceled or terminated, or if the Judgment does not become Final (individually or collectively, a "Triggering Event"), each of Plaintiffs' Counsel and Shareholder's Counsel (and each of their successors) shall be obligated to repay to Flowers, within fifteen (15) business days of the Triggering Event, the amount of the Fee Award, or part thereof, that they received respectively.  To the extent all or any remaining portion of the Fee Award remains in the Escrow Account at the time of a Triggering Event, then Federman & Sherwood will return all (or any remaining portion) of the Fee Amount to Flowers (with the interest accrued thereon) within fifteen (15) business days of the Triggering Event.

5.6     The Escrow Account, Federman & Sherwood (as receiving agent), and each of Plaintiffs' Counsel and Shareholder's Counsel who receives any portion of the Fee Award shall be subject to the Court's jurisdiction for the purposes of enforcing paragraph 5.5 herein or any other of the provisions herein related to the Fee Award.

5.7     Any order or proceeding relating to the Fee Award shall not operate to terminate the Settlement or affect the finality or binding nature of the Settlement.  If the Court determines to approve the Settlement but reserves decision on the Fee Award, any Settling Party may request that the Court enter final judgment approving the Settlement pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

5.8     Except as otherwise provided herein, each of the Settling Parties shall bear his, her, or its own costs and attorneys' fees.

5.9     In light of the benefits they have helped to create for all Current Flowers Stockholders, each of the Plaintiffs and the Shareholder may apply for Court-approved service awards in the amount of $1,500.00 each (the "Service Awards").  The Service Awards shall be funded exclusively from the Fee Award.  Defendants shall take no position on whether the Court should approve the Service Awards, and Defendants and Defendants' insurer shall have no obligation to pay any such Service Award.

**6.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

6.1     The Effective Date of the Stipulation shall be conditioned upon the occurrence of all of the following events:

> (i)     the Court's entry of the District Court Approval Order and the Judgment;
>
> (ii)    the payment of the Fee Award in accordance with ¶¶5.1-5.2 hereof;
>
> (iii)   the Judgment has become Final; and
>
> (iv)    Dismissal *with prejudice* of the State Derivative Action.

6.2     If any of the conditions specified in ¶6.1 are not met, then the Stipulation shall be canceled and terminated subject to ¶6.4, and the Settling Parties shall be restored to their respective positions in the Actions and the Shareholder Demand as of the date immediately preceding the

date of this Stipulation, unless Plaintiffs' Counsel, Shareholder's Counsel, and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

6.3     Each of the Settling Parties shall have the right to terminate the Settlement by providing written notice of their election to do so to all other Settling Parties within twenty (20) calendar days of the date on which: (i) the Court declines to approve this Stipulation, or the terms contained herein, in any material respect; (ii) the Preliminary Approval Order is not entered in substantially the form attached as Exhibit B hereto; (iii) the District Court Approval Order and the Judgment are not entered in substantially the form attached as Exhibits E and F hereto; (iv) the Judgment is reversed or substantially modified on appeal, reconsideration, or otherwise; (v) the Effective Date of the Settlement does not occur; or (vi) the State Derivative Action is not dismissed *with prejudice* as provided in this Stipulation; except that such right to terminate shall not be exercised by any Settling Party unless and until the Settling Parties have used their best efforts to remedy the issue.  Notwithstanding anything herein to the contrary, an order or proceeding relating to the Fee Award, or any appeal from any order relating thereto (or reversal or modification thereof), shall not operate to cancel the Stipulation, allow for the termination of the Settlement, or affect or delay the finality of the Judgment.

6.4     In the event that the Stipulation is not approved by the Court, or the Settlement is terminated for any reason, including pursuant to ¶6.3 above, all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission by any of the Settling Parties of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Actions, in any other action or proceeding, or in connection with the Shareholder Demand.  In such event, the terms and provisions of the Stipulation, with the exception

of ¶¶1.1-1.38, 5.5, 5.6, 6.2, 6.4, 8.4, 8.5, 8.10, 8.11, 8.14, 8.15, 8.16, and 8.17 of this Section IV, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Actions, in any other proceeding, or in connection with the Shareholder Demand for any purpose, and any judgment or orders entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

      **7.**     **<u>Bankruptcy</u>**

      7.1     In the event any proceedings by or on behalf of Flowers, whether voluntary or involuntary, are initiated under any chapter of the United States Bankruptcy Code, including any act of receivership, asset seizure, or similar federal or state law action ("Bankruptcy Proceedings"), the Settling Parties agree to use their reasonable best efforts to obtain all necessary orders, consents, releases, and approvals for effectuation of this Stipulation in a timely and expeditious manner.

      7.2     In the event of any Bankruptcy Proceedings by or on behalf of Flowers, the Settling Parties agree that all dates and deadlines set forth herein will be extended for such periods of time as are necessary to obtain necessary orders, consents, releases, and approvals from the Bankruptcy Court to carry out the terms and conditions of the Stipulation.

      **8.**     **<u>Miscellaneous Provisions</u>**

      8.1     The Settling Parties: (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

      8.2     The Settling Parties agree that the terms of the Settlement were negotiated in good faith and at arm's length by the Settling Parties, and reflect a settlement that was reached

voluntarily based upon adequate information and after consultation with competent legal counsel. Except in the event of termination of the Settlement, the Settling Parties agree not to assert under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule, or regulation, that the Actions or the Shareholder Demand were brought or defended in bad faith or without a reasonable basis.

8.3     While maintaining their positions that the claims and defenses asserted in the Actions and the Shareholder Demand are meritorious, Plaintiffs, Shareholder, Plaintiffs' Counsel, and Shareholder's Counsel, on the one hand, and Defendants and Defendants' Counsel, on the other, shall not make any public statements or statements to the media (whether or not for attribution) that disparage the other's business, conduct, or reputation, or that of their counsel, based on the subject matter of the Actions or the Shareholder Demand.  Notwithstanding the foregoing, each of the Settling Parties reserves their right to rebut, in a manner that such party determines to be reasonable and appropriate, any contention made in any public forum that the Actions or the Shareholder Demand were brought or defended in bad faith or without a reasonable basis.

8.4     Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Stipulation (including any exhibits attached hereto, all proceedings in connection with the Settlement, and any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement):

(a)     shall not be offered, received, or used in any way against the Settling Parties as evidence of, or be deemed to be evidence of, (i) a presumption, concession, or admission by any of the Settling Parties with respect to the truth of any fact alleged by Plaintiffs or Shareholder, or (ii) the validity, or lack thereof, of any claim that has been or could have been asserted or raised in

25

the Actions, in any other litigation, or in the Shareholder Demand, (iii) the deficiency or infirmity

of any defense that has been or could have been asserted or raised in the Actions, in any other

litigation, or in the Shareholder Demand or (iv) any fault, wrongdoing, negligence, or liability of

any of the Released Persons;

      (b)    shall not be offered, received, or used in any way (i) against any of the Released

Persons as evidence of, or be deemed to be evidence of, a presumption, concession, or admission

of any fault, misrepresentation or omission with respect to any statement or written document

approved, issued, or made by any Released Person, or (ii) against Plaintiffs or Shareholder as

evidence of any infirmity in their claims;

      (c)    shall not be offered, received, or used in any way against any of the Released

Persons as evidence of, or be deemed to be evidence of, a presumption, concession, or admission

of any liability, fault, negligence, omission, or wrongdoing, or in any way referred to for any other

reason as against the Released Persons in any arbitration proceeding or other civil, criminal, or

administrative action or proceeding in any court, administrative agency, or other tribunal.

      8.5    Neither this Stipulation nor the Settlement, nor any act performed or document

executed pursuant to or in furtherance of this Stipulation, or the Settlement, shall be admissible in

any proceeding for any purpose, except to enforce the terms of the Settlement; *provided, however*,

that the Released Persons may refer to the Settlement, and file the Stipulation, the District Court

Approval Order, and/or the Judgment, in any action that may be brought against them to effectuate

the protections granted them hereunder, including, without limitation, to support a defense or claim

based on principles of *res judicata*, collateral estoppel, full faith and credit, release, standing, good

faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue

preclusion or similar defense or claim under United States federal or state law or foreign law.

8.6     The exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.7     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all the Settling Parties or their respective successors-in-interest.  Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any provisions of this Stipulation.

8.8     This Stipulation and the exhibits attached hereto represent the complete and final resolution of all disputes among the Settling Parties with respect to the Actions and the Shareholder Demand, constitute the entire agreement among the Settling Parties, and supersede any and all prior negotiations, discussions, agreements, or undertakings, whether oral or written, with respect to such matters, including without limitation the term sheet dated as of September 13, 2019.

8.9     The waiver by one party of any breach of the Settlement by any other party shall not be deemed a waiver of any other prior or subsequent breach of the Settlement.  The provisions of the Settlement may not be waived except by a writing signed by the affected party, or counsel for that party.

8.10    The headings in the Stipulation and its exhibits are used for the purpose of convenience only and are not meant to have legal effect.

8.11    The Stipulation and the Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties, the Released Persons, and the Releasing Persons.  The Settling Parties agree that this Stipulation will run to their respective successors-in-interest, and they further agree that any planned, proposed, or actual sale, merger or change-in-control of Flowers shall not void this Stipulation, and that in the event of a planned, proposed, or actual sale, merger, or change-in-control of Flowers they will continue to seek final approval of

this Stipulation expeditiously, including, but not limited to, the Settlement terms reflected in this Stipulation.

8.12    The Stipulation and the exhibits attached hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Georgia and the rights and obligations of the Settling Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Georgia without giving effect to that State's choice of law principles.   No representations, warranties, or inducements have been made to any party concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

8.13    This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

8.14    All agreements made and orders entered during the course of the Actions and the Shareholder Demand relating to the confidentiality of information and documents shall survive this Stipulation.

8.15    Nothing in this Stipulation, or the negotiations or proceedings relating to the Settlement, is intended, or shall be deemed, to constitute a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege, the joint defense privilege, the accountants' privilege, or work product immunity; further, all information and documents transmitted between Plaintiffs' Counsel and Shareholder's Counsel, on the one hand, and Defendants' Counsel, on the other hand, in connection with the Settlement shall be kept

confidential and shall be inadmissible in any proceeding in any United States federal or state court, or other tribunal or otherwise, in accordance with Rule 408 of the Federal Rules of Evidence as if such Rule applied in all respects in any such proceeding or forum.

8.16    The Settling Parties intend that the Court retain jurisdiction for the purpose of effectuating and enforcing the terms of the Settlement.

8.17    Each Person executing the Stipulation or its exhibits on behalf of any of the Settling Parties hereby warrants that such Person has the full authority to do so.  The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties and their Related Persons.

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of October 28, 2019.

**FEDERMAN & SHERWOOD**

_____
William B. Federman
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com

*Lead Counsel in the Federal Derivative Action*


**THE WEISER LAW FIRM, P.C.**

_____

James M. Ficaro
22 Cassatt Ave., Suite 100
Berwyn, Pennsylvania 19312
Phone: (610) 225-2677
Fax: (610) 408-8062
rw@weiserlawfirm.com

*Counsel for Plaintiff Goldberger in the Federal Derivative Action*

**POMERANTZ LLP**

_____

Gustavo F. Bruckner
600 Third Avenue,
New York, NY 10016
Phone: (212) 661-1100
Fax: (917) 463-1044
gfbruckner@pomlaw.com

*Co-Lead Counsel in the State Derivative Action*

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of October 28, 2019.

**FEDERMAN & SHERWOOD**

William B. Federman
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com

*Lead Counsel in the Federal Derivative Action*

**THE WEISER LAW FIRM, P.C.**

James M. Ficaro
22 Cassatt Ave., Suite 100
Berwyn, Pennsylvania 19312
Phone: (610) 225-2677
Fax: (610) 408-8062
rw@weiserlawfirm.com

*Counsel for Plaintiff Goldberger in the Federal Derivative Action*

**POMERANTZ LLP**

Gustavo F. Bruckner
600 Third Avenue,
New York, NY 10016
Phone: (212) 661-1100
Fax: (917) 463-1044
gfbruckner@pomlaw.com

*Co-Lead Counsel in the State Derivative Action*

30

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of October 28, 2019.

**FEDERMAN & SHERWOOD**

William B. Federman
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com

*Lead Counsel in the Federal Derivative Action*

**THE WEISER LAW FIRM, P.C.**

James M. Ficaro
22 Cassatt Ave., Suite 100
Berwyn, Pennsylvania 19312
Phone: (610) 225-2677
Fax: (610) 408-8062
rw@weiserlawfirm.com

*Counsel for Plaintiff Goldberger in the Federal Derivative Action*

**POMERANTZ LLP**

Gustavo F. Bruckner
600 Third Avenue,
New York, NY 10016
Phone: (212) 661-1100
Fax: (917) 463-1044
gfbruckner@pomlaw.com

*Co-Lead Counsel in the State Derivative Action*

**LEVI & KORSINSKY, LLP**

_____

William J. Fields
55 Broadway, 10th Floor
New York, NY 10006
Phone: (212) 363-7500
Fax: (212) 363-7171
wfields@zlk.com

_Co-Lead Counsel in the State Derivative Action_

**THE ROSEN LAW FIRM, P.A.**

_____

Phillip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com

**THE BROWN LAW FIRM, P.C.**
Timothy Brown
240 Townsend Square
Oyster Bay, NY 11771
Phone: (516) 922-5427
Fax: (516) 344-6204
tbrown@thebrownlawfirm.net

_Counsel for the Shareholder_

**JONES DAY**

_____

Michael J. McConnell
Ashley F. Heintz
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309
Phone: 404-581-3939
Fax: 404-581-8330

_Attorneys for Defendants_

31

**LEVI & KORSINSKY, LLP**

_____

William J. Fields
55 Broadway, 10th Floor
New York, NY 10006
Phone: (212) 363-7500
Fax: (212) 363-7171
wfields@zlk.com

*Co-Lead Counsel in the State Derivative Action*

**THE ROSEN LAW FIRM, P.A.**

_____

Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com

**THE BROWN LAW FIRM, P.C.**
Timothy Brown
240 Townsend Square
Oyster Bay, NY 11771
Phone: (516) 922-5427
Fax: (516) 344-6204
tbrown@thebrownlawfirm.net

*Counsel for the Shareholder*

**JONES DAY**

_____

Michael J. McConnell
Ashley F. Heintz
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309
Phone: 404-581-3939
Fax: 404-581-8330

*Attorneys for Defendants*

**LEVI & KORSINSKY, LLP**

_____

William J. Fields
55 Broadway, 10th Floor
New York, NY 10006
Phone: (212) 363-7500
Fax: (212) 363-7171
wfields@zlk.com

*Co-Lead Counsel in the State Derivative Action*

**THE ROSEN LAW FIRM, P.A.**

_____

Phillip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com

**THE BROWN LAW FIRM, P.C.**
Timothy Brown
240 Townsend Square
Oyster Bay, NY 11771
Phone: (516) 922-5427
Fax: (516) 344-6204
tbrown@thebrownlawfirm.net

*Counsel for the Shareholder*

**JONES DAY**

*Michael J. McConnell* (by permission JCM)

Michael J. McConnell
Ashley F. Heintz
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309
Phone: 404-581-3939
Fax: 404-581-8330

*Attorneys for Defendants*

# EXHIBIT A

# EXHIBIT A

A.  **Corporate Governance Reforms**

  1.  **Regulatory Disclosure**

  Flowers will add a narrative to the proxy or annual report summarizing the consideration or review by the Audit Committee of regulatory issues during the relevant year.

  2.  **Amendment of the Audit Committee Charter**

  The Board shall approve the amendment of the Audit Committee's charter in accordance with the revision of that document as set forth in the attached Exhibit A-1.

  3.  **Disclosure Committee Chairman Report to Audit Committee**

  The Chairman of Flowers' Disclosure Committee will report quarterly to the Audit Committee.

  4.  **Disclosure Committee Charter**

  The Disclosure Committee shall adopt a charter as set forth in the attached Exhibit A-2.

  5.  **Presentation to Compensation Committee's Consultant**

  A consultant to the Compensation Committee of the Board will review Flowers' existing clawback policy and consider whether additional flexibility should be provided under that policy. As part of that review, Plaintiffs' counsel in the Actions may provide a thirty (30) minute telephonic presentation to the consultant. Flowers' counsel and/or counsel representing any relevant committee may listen to the telephonic presentation.

  6.  **Officer and Director Education**

  Flowers' outside counsel will provide an annual update to the Board and Flowers' Section 16 officers regarding applicable labor and franchise laws and regulations, including the Fair Labor Standards Act ("FLSA"). Also, the officers serving in the positions designated in the attached Exhibit A-3 shall receive formal training each year regarding compliance with the FLSA.

B.  **Confirmation of Officer Responsibilities for Corporate Compliance**

  Ms. Stephanie B. Tillman currently serves as Flowers' Chief Compliance Officer and Deputy General Counsel. As of January 1, 2020, Ms. Tillman will become Flowers' Chief Legal Officer. Beginning January 1, 2020, the functions and responsibilities of the Chief Compliance Officer will be subsumed within the office of the Chief Legal Officer and, as a result, Ms. Tillman will continue to perform the functions and responsibilities of Chief Compliance Officer after 2019.

# EXHIBIT A-1

**FLOWERS FOODS, INC.**

**AUDIT COMMITTEE CHARTER**

## I.      Purposes

The purposes of the Audit Committee (the "Committee") are to assist the Board of Directors (the "Board") of Flowers Foods, Inc. (the "Company") in fulfilling the Board of Directors' oversight responsibilities with respect to the:

(i)      integrity of the Company's financial statements;

(ii)      Company's compliance with legal and regulatory requirements;

(iii)      independent auditors' qualifications, independence and performance and the approval of the independent auditors' fees and allowable non-audit fees;

(iv)      Company's internal audit function;

(v)      effectiveness of the Company's internal control over financial reporting; and

(vi)      preparation of the Committee's report, made pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), to be included in the Company's annual proxy statement (the "Audit Committee Report").

## II.      Composition

***Size.***  The Committee shall consist of no fewer than three members.

***Qualifications.***  Each Committee member shall have all of the following qualifications:

1.      Each Committee member shall meet the independence criteria of (a) the rules of the New York Stock Exchange, Inc. ("NYSE"), as such requirements are interpreted by the Board of Directors in its business judgment and as set forth in the Company's Corporate Governance Guidelines, and (b) Section 301 of the Sarbanes-Oxley Act of 2002 and the rules and listing requirements promulgated thereunder by the Securities and Exchange Commission ("SEC"), including Rule 10A-3 of the Exchange Act, and the NYSE.

2.      Each Committee member shall be financially literate, as determined by the Board of Directors in its business judgment, or shall become financially literate within a reasonable period of time after his or her appointment to the Committee.  In addition, at least one Committee member must (a) have accounting or related financial management expertise, as determined by the Board of Directors in its business judgment, and (b) meet the financial expert criteria of Section 407 of the Sarbanes-Oxley Act of 2002 and any rules promulgated thereunder by the SEC.  The designation or identification of a person as an audit committee financial expert shall not (a) impose on such person any duties, obligations or liability that are greater than the duties, obligations and liability imposed on such person as a member of the audit committee and board of directors in the absence of such designation or

identification, or (b) affect the duties, obligations or liability of any other member of the audit committee or board of directors.

3.  Each Committee member shall receive as compensation from the Company only those forms of compensation as are not prohibited by Section 301 of the Sarbanes-Oxley Act of 2002 and the rules and listing requirements promulgated thereunder by the SEC and the NYSE.  Permitted compensation includes (a) director's fees (which includes all forms of compensation paid to directors of the Company for service as a director or member of a Board Committee) and/or (b) fixed amounts of compensation under a retirement plan (including deferred compensation) for prior service with the Company provided that such compensation is not contingent in any way on continued service.  Additional directors' fees may be paid to audit committee members to compensate them for the significant time and effort they expend in performing their duties as audit committee members.

4.  Each Committee member shall serve on no more than three audit committees of public companies (including the Company).

    ***Appointment.***  The Board of Directors will appoint the members and the Committee Chair. The Committee Chair and each Committee member shall serve at the pleasure of the Board of Directors and for such term or terms as the Board of Directors may determine.

## III.    Duties and Responsibilities

    The Committee is responsible for overseeing the Company's financial reporting process on behalf of the Board of Directors.  Management (including, without limitation, the Chief Executive Officer and Chief Financial Officer) is responsible for the preparation, presentation, and integrity of the Company's financial statements and for the appropriateness of the accounting and reporting policies that are used by the Company.  The independent auditors are responsible for auditing the Company's financial statements and for reviewing the Company's interim financial statements. The independent auditors report directly to the Committee.

    The Committee is directly responsible for the appointment, compensation, retention and oversight of the work of the Company's independent auditors (including resolution of disagreements between management and the auditors regarding financial reporting) for the purpose of preparing or issuing an audit report or performing other audit, review or attest services for the Company.

    In performing its responsibilities, the Committee shall:

1.  <u>Retain the Independent Auditors</u>:  The Committee has the sole authority to (a) retain and terminate the Company's independent auditors, (b) approve all audit engagement fees, terms and services, and (c) approve any non-audit engagements with the Company's independent auditors.  The Committee is to exercise this authority in a manner consistent with Sections 201, 202 and 301 of the Sarbanes-Oxley Act of 2002 and the rules and listing standards promulgated thereunder by the SEC and the NYSE.

2.  <u>Permissible Non-Audit Services; Pre-Approval Policy</u>.  The Committee shall approve in advance all permissible non-audit services to be provided by the independent auditors.  The

Committee will consider and, if appropriate, give advance approvals to specified classes of non-audit services in accordance with policies adopted by the Committee.  Non-audit services shall be provided by the independent auditors, only as approved in advance by the Committee.

3.    <u>Retain the Internal Auditors</u>:  The Committee has the sole authority to retain and terminate and establish the compensation of the internal auditors and is responsible for oversight of all services performed by the internal auditors.

4.    <u>Review and Discuss the Auditors' Quality-Control</u>:  The Committee is to, at least annually, obtain and review a report by the independent auditors describing (a) the audit firm's internal quality-control procedures, (b) any material issues raised by the most recent internal quality-control review, or peer review, of the firm, or by any inquiry or investigation by governmental or professional authorities, within the preceding five years, respecting one or more independent audits carried out by the firm, and any steps taken to deal with any such issues and (c) all relationships between the independent auditors and the Company.

5.    <u>Review and Discuss the Independence of the Auditors</u>:  In connection with the retention of the Company's independent auditors, the Committee will regularly review and discuss the information provided by management and the auditors relating to the independence of the audit firm, including, among other things, information related to the non-audit services provided and expected to be provided by the auditors.  The Committee is responsible for (a) ensuring that the independent auditors submit at least annually to the Committee a formal written statement delineating all relationships between the auditors and the Company consistent with applicable independence standards, (b) actively engaging in a dialogue with the auditors with respect to any disclosed relationship or services that may impact the objectivity and independence of the auditors, and (c) taking appropriate action in response to the auditors' report to satisfy itself of the auditors' independence.  In connection with the Committee's evaluation of the auditors' independence, the Committee shall also take such steps as may be required by law with respect to the identification and regular rotation of the audit partners serving on the Company's audit engagement team.

6.    <u>Set Hiring Policies</u>:  The Committee is to set clear hiring policies for employees or former employees of the independent auditors, which include the restrictions set forth in Section 206 of the Sarbanes-Oxley Act of 2002 and any rules promulgated thereunder by the SEC.

7.    <u>Review and Discuss the Audit Plan</u>:  The Committee is to review and discuss with the independent auditors the plans for, and the scope of, the annual audit and other examinations including, without limitation, any audits of Company benefit plans.

8.    <u>Review and Discuss Conduct of the Audit</u>:  The Committee is to review and discuss with the independent auditors the matters required to be discussed by Auditing Standard No. 1301 relating to the conduct of the audit, as well as any audit problems or difficulties and management's response, including (a) any restriction on audit scope or on access to requested information, (b) any disagreements with management, and (c) significant issues discussed with the independent auditors' national office.  The Committee is to decide all

unresolved disagreements between management and the independent auditors regarding financial reporting.

9. <u>Review and Discuss Financial Statements and Disclosures</u>:  The Committee is to review and discuss with appropriate officers of the Company and the independent auditors the annual audited and quarterly financial statements of the Company, including (a) the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," and (b) the disclosures regarding internal controls and other matters required by Sections 302 and 404 of the Sarbanes-Oxley Act of 2002 and any rules promulgated thereunder by the SEC.   The Committee will make a recommendation to the Board of Directors whether or not the annual audited financial statements be included in the Company's Form 10-K.

10. <u>Review and Discuss Earnings Press Releases</u>:  The Committee is to review and discuss earnings and other financial press releases (including any use of "pro forma" or "adjusted" non-GAAP information), as well as financial information and earnings guidance provided to analysts and rating agencies (which review may occur after issuance and may be done generally as a review of the types of information to be disclosed and the form of presentation to be made).

11. <u>Review and Discuss Internal Audit Plans</u>:  The Committee is to meet separately (*i.e.*, outside the presence of management) with the senior internal auditing executive and appropriate members of the staff of the internal auditing department to review, discuss and approve the plans for and the scope of their ongoing audit activities.

12. <u>Review and Discuss Internal Audit Reports</u>:  The Committee is to meet separately (*i.e.*, outside the presence of management) with the senior internal auditing executive and appropriate members of the staff of the internal auditing department to review and discuss the annual report of the audit activities, examinations and results thereof of the internal auditing department.

13. <u>Review and Discuss the Systems of Internal Accounting Controls</u>:  The Committee is to review and discuss with the independent auditors, Chief Financial Officer, the senior internal auditing executive, the General Counsel and, if and to the extent deemed appropriate by the Chairman of the Committee, members of their respective staffs the adequacy and effectiveness of the Company's internal accounting controls, including any significant deficiencies or material weaknesses in the design or operation of, and any material changes in, the Company's internal controls, the Company's financial, auditing and accounting organizations and personnel, and the Company's policies and compliance procedures with respect to business practices which shall include the disclosures regarding internal controls and matters required by Sections 302 and 404 of the Sarbanes-Oxley Act of 2002 and any rules promulgated thereunder by the SEC.

14. <u>Review and Discuss the Recommendations of Independent Auditors</u>:  The Committee is to meet separately (*i.e.*, outside the presence of management) with the senior internal auditing executive and the appropriate members of the staff of the internal auditing department to review and discuss recommendations made by the independent auditors and the senior

internal auditing executive, as well as such other matters, if any, as such persons or other officers of the Company may desire to bring to the attention of the Committee.

15. <u>Review and Discuss the Audit Results</u>:  The Committee is to meet separately (*i.e.*, outside the presence of management) with the independent auditors to review and discuss (A) the report(s) of their annual audit(s), or proposed report(s) of their annual audit(s), (B) the accompanying management letter, if any, (C) the reports of their reviews of the Company's interim financial statements conducted in accordance with Auditing Standard No. 4105, and (D) the reports of the results of such other examinations outside of the course of the independent auditors' normal audit procedures that the independent auditors may from time to time undertake.  The foregoing shall include the reports required by Section 204 of the Sarbanes-Oxley Act of 2002 and any rules promulgated thereunder by the SEC and, as appropriate, a review of (a) major issues regarding (i) accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, and (ii) the adequacy of the Company's internal controls and any special audit steps adopted in light of material control deficiencies; (b) analyses prepared by management and/or the independent auditors setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements; and (c) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements of the Company.

16. <u>Obtain Assurances under Section 10A(b) of the Exchange Act</u>:  The Committee is to obtain assurance from the independent auditors that in the course of conducting the audit(s), there have been no acts detected or that have otherwise come to the attention of the audit firm that require disclosure to the Committee under Section 10A(b) of the Exchange Act.

17. <u>Discuss Risk Management Policies</u>:  The Committee is to discuss guidelines and policies with respect to risk assessment and risk management to assess and manage the Company's exposure to risk.  The Committee should discuss the Company's major financial risk exposures and the steps management has taken to monitor and control these exposures.  The Committee shall oversee the Company's enterprise risk management activities ("ERM"), with the full understanding that responsibility for ERM continues to be shared by the entire Board of Directors and all directors have the authority and obligation to scrutinize the Company's ERM efforts.  There will be regular reports to the Board of Directors by management and the Committee as to the Company's ERM.  The Committee will as a part of this responsibility specifically inquire and discuss policies and processes for assessing and managing risk associated with information technology and cyber security.

18. <u>Obtain Reports Regarding Conformity With Legal Requirements and the Company's Code of Business Conduct and Ethics</u>:  The Committee is to periodically obtain reports from management, the Chief Financial Officer, the Company's senior internal auditing executive and the independent auditor that the Company and its subsidiary/foreign affiliated entities are in conformity with applicable legal requirements and the Company's Code of Business Conduct and Ethics, including, but not limited to, compliance with the Fair Labor Standards Act of 1938, as amended, and any applicable rules or regulations promulgated

- 5 -

thereunder.  The Committee is to review and discuss reports and disclosures of insider and affiliated party transactions.  The Committee should advise the Board of Directors with respect to the Company's policies and procedures regarding compliance with such applicable laws and regulations and with the Company's Code of Business Conduct and Ethics.

19.   <u>Establish Procedures for Complaints Regarding Financial Statements or Accounting Policies</u>:   The Committee is to establish and oversee procedures for (A) the receipt, retention, and treatment of complaints received by the Company regarding accounting, internal accounting controls, or auditing matters; and (B) the confidential, anonymous submission by employees of the Company of concerns regarding questionable accounting or auditing matters as required by Section 301 of the Sarbanes-Oxley Act of 2002 and the rules and listing requirements promulgated thereunder by the SEC and the NYSE.

20.   <u>Discuss Legal Affairs</u>:  The Committee will periodically discuss with management and the independent auditors the Company's legal affairs, including (a) any actions taken by, and correspondence with, any governmental authorities, (b) any governmental matters that may have a material impact on the Company and (c) any other significant outstanding legal matters involving the Company or any of its subsidiaries that may have a material impact on the Company's financial statements or the Company's compliance policies.

21.   <u>Review and Discuss Other Matters</u>:  The Committee should review and discuss such other matters that relate to the accounting, auditing and financial reporting practices and procedures of the Company as the Committee may, in its own discretion, deem desirable in connection with the review functions described above.

22.   <u>Make Board Reports</u>:  The Committee should report its activities regularly to the Board of Directors in such manner and at such times as the Committee and the Board of Directors deem appropriate.  Such report should include a review of any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Company's independent auditors or the performance of the internal audit function.

23.   <u>Maintain Flexibility</u>.  The Committee, in carrying out its responsibilities, policies and procedures should remain flexible, in order to best react to changing conditions and circumstances.  The Committee should take appropriate actions to set the overall corporate "tone" for quality financial reporting, sound business risk practices, and ethical behavior.

## IV.   Meetings

The Committee shall meet in person or telephonically at least quarterly, or more frequently as it may determine necessary, to comply with its responsibilities as set forth herein.  The Chair shall, in consultation with the other members of the Committee, the Company's independent auditors and the appropriate officers of the Company establish the agenda for each meeting.  Each Board member may submit items to be included on the agenda.  Committee members may also raise subjects that are not on the agenda at any meeting.  The Committee Chair or a majority of the Committee members may call a meeting of the Committee at any time.  The Committee shall

conduct its business as provided in the Company's by-laws.  The Committee Chair shall supervise the conduct of the meetings and shall have other responsibilities which the Committee may designate from time to time. In the absence of the Committee Chair at any duly called meeting of the Committee at which a quorum is present, the Committee, by majority vote of those members present, shall designate one of the present members to serve as Acting Committee Chair for the meeting.

The Committee may request any officer or employee of the Company or the Company's outside legal counsel or independent auditors to attend a meeting of the Committee or to meet with any members of, or consultants to, the Committee.  The Committee shall meet with the Company's management, the internal auditors and the independent auditors in separate private sessions to discuss any matter that the Committee, management, the independent auditors or such other persons believe should be discussed privately. Any Committee member may be excused from a meeting to permit the remaining members of the Committee to act on any matter in which such member's participation is not appropriate, and such member's absence shall not destroy the quorum for the meeting.

The Committee may, from time to time, determine that information or materials distributed or presented, or the specifics of deliberations held, at a Committee meeting would harm the Company if shared outside the Board and should be accessed by Board members only. If the Committee makes such a determination, the Committee must specifically identify the material to be protected and mark it as "Sensitive Committee Material." Sensitive Committee Material may not be disclosed in any way outside the Board, except as required by applicable law or by the affirmative vote of a majority of the Board. The designation of material as Sensitive Committee Material will be as narrow as possible and may not interfere in any way with the Committee's duty under this charter and applicable law and regulations to provide a report to the Board.

## V.    Delegation

The Committee may, in its discretion, delegate all or a portion of its duties and responsibilities to a subcommittee, unless prohibited by applicable law, rule, regulation, or the Company's Articles of Incorporation or Bylaws.

## VI.    Resources and Authority of the Committee

The Committee shall have the resources and authority appropriate to discharge its responsibilities as required by law, including the authority to engage independent counsel and other advisors as the Committee deems necessary to carry out its duties.  The Committee may also, to the extent it deems necessary or appropriate, meet with the Company's investment bankers or financial analysts who follow the Company.

The Company will provide for appropriate funding, as determined by the Committee, for payment of (i) compensation to the Company's independent auditors engaged for the purpose of rendering or issuing an audit report or related work or performing other audit, review or attest services for the Company, (ii) compensation to independent counsel or any other advisors

employed by the Committee, and (iii) ordinary administrative expenses of the Committee that are necessary or appropriate in carrying out its duties.

## VII.   Audit Committee Report

The Committee will prepare, with the assistance of management, the independent auditors and outside legal counsel, the Audit Committee Report.

## VIII.   Annual Review

At least annually, the Committee shall (a) review this Charter with the Board and recommend any changes to the Board and (b) evaluate its own performance in the manner prescribed by the Nominating/Corporate Governance Committee and report the results of this evaluation to the Board.

August 17[●], 20182019

# EXHIBIT A-2

# FLOWERS FOODS, INC.

## DISCLOSURE COMMITTEE CHARTER

### I.   Preamble

Flowers Foods, Inc. (the "Company") endeavors to ensure that accurate and complete information regarding the Company and its operations and financial performance is provided to shareholders and the investment community in a timely manner, in a clear, concise and understandable format and in full compliance with the requirements of applicable securities laws and the rules and regulations of the New York Stock Exchange, Inc.  In order to accomplish this goal and to assist the Company's Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO") to discharge their responsibilities in certifying as to the Company's periodic reports under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Company previously established a Disclosure Committee (the "Committee") comprised of management without a written charter to discharge the duties and responsibilities set forth herein. The Company has elected to memorialize the duties and responsibilities of the Committee in this Charter.

### II.   Purposes

The Committee has the following purposes:

(i)      to evaluate the effectiveness of the Company's "disclosure controls and procedures," which is defined as controls and procedures that are designed to ensure that information required to be disclosed by the Company in its Exchange Act reports filed with the Securities and Exchange Commission (the "SEC") is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms;

(ii)      to review the Company's annual and quarterly Exchange Act reports prior to the Company filing them with the SEC to assess the quality of the disclosures made in the reports;

(iii)      to report to the CEO and CFO, prior to these officers executing their certifications related to the Company's annual and quarterly Exchange Act reports, the Committee's evaluation findings and conclusions regarding the effectiveness of the Company's disclosure controls and procedures and the Committee's assessment of the quality of the disclosures made in the Company's annual and quarterly Exchange Act reports; and

(iv)      to assist the Company in establishing guidelines and procedures designed to gather timely the information required to be disclosed in the Company's annual and quarterly Exchange Act reports and other public disclosures.

### III.   Composition

The members of the Committee shall be those individuals holding the positions set forth on Exhibit A attached hereto. The members of the Committee shall be appointed and may be replaced by the CEO or the CFO. The Company's Vice President and Corporate Controller shall serve as Chair of the Committee.

**IV.     Duties and Responsibilities**

1.      The Committee shall meet prior to the filing of each of the Company's annual and quarterly Exchange Act reports, as necessary from time to time to evaluate the necessity of making public disclosures, and otherwise as it determines.

2.      The Committee shall review and approve the guidelines and procedures to be distributed to appropriate management and other Company personnel designed to gather timely the information required to be disclosed in the Company's Exchange Act reports (which include annual reports on Form 10-K and quarterly reports on Form 10-Q, current reports on Form 8-K, and proxy statements).  Such guidelines and procedures shall be designed to operate so that important information flows to the appropriate collection and disclosure points in a timely manner and includes procedures relating to the prompt communication of information relating to events required to be reported by the Company within four business days in a current report on Form 8-K.

3.      The Committee shall establish timelines for preparation of the Company's annual and quarterly Exchange Act reports, which timelines shall include critical dates and deadlines during the disclosure process relating to the preparation of drafts, the circulation of drafts to appropriate Company personnel, the Company's independent auditors and the Audit Committee of the Board of Directors of the Company (the "Audit Committee"), and the receipt of comments and the review of such comments by the Committee.  Such timetables should allow for circulation of draft reports to the Committee, the CEO, the CFO, and the Audit Committee sufficiently in advance of the applicable filing deadline in order to enable such persons to review carefully the filing and discuss any questions and comments related thereto.

4.      The Committee shall evaluate the effectiveness of the Company's disclosure controls and procedures prior to the filing of each of the Company's annual and quarterly Exchange Act reports with the SEC and assist the CEO and the CFO with their evaluation of the effectiveness of those disclosure controls and procedures.  The Committee's evaluation shall include, but not be limited to:

- assessing the adequacy of the Company's disclosure controls and procedures in place to ensure that material information required to be disclosed in the Company's Exchange Act reports is being recorded, processed, summarized and reported in those Exchange Act reports;

- identifying all significant deficiencies in the design or operation of the Company's internal controls, which could adversely affect the Company's ability to record, process, summarize and report financial data;

- monitoring the corrective actions being taken to address any known significant deficiencies in the design or operation of the Company's internal controls; and

- identifying any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal controls.

5. The Committee shall review each annual and quarterly Exchange Act report prior to the Company filing them with the SEC to assess the quality of the disclosures made in the report, including, but not limited to, whether the report is accurate and complete in all material respects.

6. The Committee shall report to the CEO and the CFO the Committee's evaluation findings and conclusions regarding the effectiveness of the Company's disclosure controls and procedures and the Committee's assessment of the quality of the disclosures made in the Company's annual and quarterly Exchange Act reports.  This Committee report shall occur prior to the filing of each of the Company's annual and quarterly Exchange Act reports. In addition, the Chair of the Committee shall report, at least quarterly, to the Audit Committee.

## V.     Meetings

The Committee shall meet prior to the filing of each of the Company's annual and quarterly Exchange Act reports, as necessary from time to time to evaluate the necessity or appropriateness of making public disclosures, and otherwise as it determines.

## VI.    Resources and Authority

The Committee shall have appropriate resources and authority to discharge its responsibilities, including, without limitation, appropriate funding, in such amounts as the Committee deems necessary, to compensate any consultants or any other advisors retained by the Committee.  The Committee may also retain independent counsel and other independent advisors to assist it in carrying out its responsibilities.

## VII.   Annual Review

At least annually, the Committee shall review this Charter and recommend any changes to the CEO and the CFO for approval.

August 13, 2019

Exhibit A

Disclosure Committee Composition

Vice President and Corporate Controller*
President and Chief Executive Officer
Chief Financial Officer & Chief Administrative Officer
Senior Vice President and Chief Accounting Officer
Vice President of Financial Planning & Analysis
Vice President of Plant Finance (Flowers Bakeries, LLC)
Chief Legal Officer
Vice President, Chief Compliance Officer and Deputy General Counsel
Chief Operating Officer
Chief Sales Officer
President, Fresh Bakery Business Unit
President, Specialty/Snacking Business Unit
Chief Supply Chain Officer
Chief Human Resources Officer
Chief Marketing Officer
Business Unit Senior Vice President - Channel (Flowers Bakeries, LLC)
Senior Vice President of Finance and Chief Risk Officer (Flowers Bakeries, LLC)
Senior Vice President of Logistics (Flowers Bakeries, LLC)
Vice President of Treasury & Investor Relations
Senior Vice President of Communications and Corporate Responsibility
Senior Vice President and Chief Information Officer (Flowers Bakeries, LLC)

*Chair of the Disclosure Committee

# EXHIBIT A-3

## LIST OF OFFICERS

- Chief Legal Counsel

- Chief Operations Officer

- Chief Sales Officer

- Senior Vice President of DSD Sales

- Vice President of Distributor Enablement

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

IN RE: FLOWERS FOODS INC.      )
DERIVATIVE LITIGATION          )   Master File No.: 7:18-cv-00084-WLS
                               )
                               )

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT**

WHEREAS, plaintiffs William D. Wrigley and Stephen Goldberger ("Plaintiffs") have made an unopposed motion (Doc. 26), pursuant to Federal Rule of Civil Procedure 23.1(c), for an order: (i) preliminarily approving the proposed settlement (the "Settlement") of the above-captioned stockholder derivative action (the "Federal Derivative Action") in accordance with the Stipulation and Agreement of Settlement dated October 28, 2019 (the "Stipulation"), which, together with the exhibits annexed thereto, sets forth the terms and conditions of the proposed Settlement (for, among other things, dismissal of the Federal Derivative and State Derivative Actions *with prejudice* upon the terms and conditions set forth therein); and (ii) approving distribution of the Notice of Proposed Derivative Settlement (the "Notice") and Summary Notice of Proposed Derivative Settlement ("Summary Notice") attached to the Stipulation as Exhibits C and D, respectively;

WHEREAS, capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation; and

WHEREAS, this Court, having considered the Stipulation and the exhibits annexed thereto and having heard the arguments of the parties;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      The Court GRANTS Plaintiffs' unopposed motion for preliminary approval of the Settlement (Doc. 26).

2.      This Court does hereby preliminarily approve, subject to further consideration at the Settlement Hearing described below, the Stipulation and the Settlement set forth therein, including the terms and conditions for: (i) a proposed Settlement and dismissal of the Actions *with prejudice* as to the Released Persons; and (ii) an award of attorneys' fees and reimbursement of expenses to the Plaintiffs' Counsel and Shareholder's Counsel.

3.      A hearing (the "Settlement Hearing") shall be held before this Court on

_____, 201_, at _____ _.m. at the C.B. King United States Courthouse, 201 West Broad

Avenue, Albany, Georgia 31701 to determine: (i) whether the proposed Settlement of the Action

on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate, in

the best interests of Flowers and its stockholders, and should be approved by the Court;

(ii) whether to approve the Fee Award; (iii) whether to approve the Service Awards; and

(iv) whether the District Court Approval Order and Judgment attached to the Stipulation as

Exhibits E and F, respectively, should be entered herein.

4.      The Court approves, as to form and content, the Notice and Summary Notice

(attached to the Stipulation as Exhibits C and D, respectively) and finds that the distribution of

the Notice and Summary Notice substantially in the manner and form set forth in ¶ 3.3 of the

Stipulation meets the requirements of Federal Rule of Civil Procedure 23.1 and due process, is

the best notice practicable under the circumstances, and shall constitute due and sufficient notice

of the matters set forth therein for all purposes to all Persons entitled to such notice.

5.      Within seven (7) business days after entry of this Order, Flowers shall (i) cause

the Summary Notice to be published one time in *Investor's Business Daily* online edition; and

(ii) publish the Stipulation and the Notice on an Internet page, which is accessible via a link on

the "Investor Relations" page of Flowers' website, the address of which will be contained in the

Notice and which posting shall be maintained through the date of the Settlement Hearing.

Flowers and/or its insurers shall be solely responsible for the costs of disseminating the Notice

and Summary Notice as set forth in this paragraph.

6.    At least twenty-one (21) calendar days prior to the Settlement Hearing, Flowers' counsel shall serve on Plaintiffs' Counsel and file with the Court proof, by affidavit or declaration, of such publication of the Notice and Summary Notice.

7.    All Current Flowers Stockholders shall be bound by all orders, determinations, and judgments in this Action concerning the Settlement, whether favorable or unfavorable to Current Flowers Stockholders.

8.    Pending final determination of whether the Settlement should be approved, no Flowers stockholder, either directly, representatively, or in any other capacity, shall commence or prosecute against any of the Released Persons any action or proceeding in any court or tribunal asserting any of the Released Claims.

9.    All papers in support of the Settlement and the Fee Award shall be filed by Plaintiffs with the Court and served at least thirty-five (35) calendar days prior to the Settlement Hearing.  Any objection to Plaintiffs' Counsel's application for attorneys' fees and expenses shall be filed and served no later than twenty-one (21) calendar days before the Settlement Hearing.  Any replies to any objections shall be filed with the Court and served at least seven (7) calendar days prior to the Settlement Hearing.

10.   Any Current Flowers Stockholder may appear and show cause if he, she, or it has any reason why the terms and conditions of the proposed Settlement should not be approved as fair, reasonable, and adequate; why the District Court Approval Order and the Judgment should not be entered thereon; or why the Fee Award should not be approved; provided, however, that unless otherwise ordered by the Court, no Current Flowers Stockholder shall be heard or entitled to contest the approval of all or any of the terms and conditions of the proposed Settlement, the Fee Award to be awarded to the Plaintiffs' Counsel and Stockholder's Counsel, or, if approved,

-3-

the District Court Approval Order and the Judgment to be entered thereon, unless that Current

Flowers Stockholder has, at least twenty-one (21) calendar days prior to the Settlement Hearing,

filed with the Clerk of the Court and delivered to the following counsel (by hand or overnight

courier or sent by first class mail): (1) a written objection to the Settlement setting forth: (a) the

stockholder's name, address, and telephone number; (b) the nature of the objection; (c) proof of

current ownership of Flowers stock, including the number of shares of Flowers stock and the

date of purchase; and (d) any documentation in support of such objection; and (2) if a Current

Flowers Stockholder intends to appear in person, or through counsel, and requests to be heard at

the Settlement Hearing, such stockholder must have provided, in addition to the requirements of

(1) above, (a) a written notice of such stockholder's intention to appear; and (b) the identities of

any witnesses the stockholder intends to call at the Settlement Hearing and a statement as to the

subjects of their testimony, signed as authorized by the objecting stockholder, and served copies

of any papers and briefs in support thereof to:

> William B. Federman
> FEDERMAN & SHERWOOD
> 10205 N. Pennsylvania Avenue
> Oklahoma City, OK 73120
>
> *Lead Counsel for Plaintiffs*
>
> Michael J. McConnell
> JONES DAY
> 1420 Peachtree Street, N.E., Suite 800
> Atlanta, GA 30309
>
> *Counsel for Nominal Defendant Flowers Foods, Inc.*

The written objections and copies of any papers and briefs in support thereof to be filed

in Court shall be delivered by hand, overnight courier, or sent by first class mail to:

CLERK OF THE COURT
C.B. King United States Courthouse
201 West Broad Avenue
Albany, Georgia 31701

Any Current Flowers Stockholder who does not make his, her, or its objection substantially in the manner provided herein shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Settlement as incorporated in the Stipulation and to the Fee Award, unless otherwise ordered by the Court, but shall otherwise be bound by the District Court Approval Order and Judgment to be entered and the releases to be given.

11.     The provisions contained in the Stipulation (including any exhibits attached thereto) shall not be deemed a presumption, concession, or admission by any Settling Party of (i) any fault, liability, or wrongdoing, or (ii) lack of merit as to any facts or claims alleged or asserted in the Actions or in any other action or proceeding.  The provisions contained in the Stipulation shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Actions or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement.  The Released Persons may file the Stipulation, District Court Approval Order, and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, breach of contract, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.     All proceedings in the Federal Derivative Action, other than as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended pending final determination of whether the Settlement provided for in the Stipulation shall be approved.

-5-

13.     Pending the Effective Date of the Stipulation or the termination of the Stipulation according to its terms, the Stockholders and their Related Persons are barred and enjoined from initiating, instituting, commencing, maintaining, prosecuting, or in any way participating in any action or proceeding asserting any of the Released Claims against any of the Released Persons.

14.     The Court reserves the right to adjourn the date of the Settlement Hearing or modify any other dates set forth herein without further notice to Flowers stockholders, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement.

15.     The Court may approve the Settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to Flowers stockholders.

IT IS SO ORDERED.

DATED: _____          _____
                                     The Honorable W. Louis Sands
                                     Senior United States District Judge

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

IN RE: FLOWERS FOODS INC.   )
DERIVATIVE LITIGATION    ) Master File No.: 7:18-cv-00084-WLS
               )
               )

## <u>NOTICE OF PROPOSED DERIVATIVE SETTLEMENT</u>

TO:        **ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF STOCK OF FLOWERS FOODS, INC. ("FLOWERS" OR THE "COMPANY") AS OF OCTOBER 28, 2019 ("CURRENT FLOWERS STOCKHOLDERS").**

        **PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. THIS NOTICE RELATES TO A PROPOSED SETTLEMENT AND DISMISSAL OF STOCKHOLDER DERIVATIVE LITIGATION AND CONTAINS IMPORTANT INFORMATION REGARDING YOUR RIGHTS. YOUR RIGHTS MAY BE AFFECTED BY THESE LEGAL PROCEEDINGS. IF THE COURT APPROVES THE SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE APPROVAL OF THE PROPOSED SETTLEMENT AND FROM PURSUING THE RELEASED CLAIMS.**

        **IF YOU HOLD FLOWERS STOCK FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER.**

        **THE COURT HAS MADE NO FINDINGS OR DETERMINATIONS CONCERNING THE MERITS OF THE ACTION. THE RECITATION OF THE BACKGROUND AND CIRCUMSTANCES OF THE SETTLEMENT CONTAINED HEREIN DOES NOT CONSTITUTE THE FINDINGS OF THE COURT. IT IS BASED ON REPRESENTATIONS MADE TO THE COURT BY COUNSEL FOR THE SETTLING PARTIES.**

**YOU ARE HEREBY NOTIFIED**, pursuant to an Order of the United States District Court for the Middle District of Georgia (the "Court"), that a proposed Settlement has been reached among the parties to the stockholder actions brought derivatively on behalf of Flowers, captioned *In re: Flowers Foods, Inc. Derivative Litigation*, Master File No.: 7:18-cv-00084-WLS, pending in the United States District Court for the Middle District of Georgia (the "Federal Derivative Action") and *In re Flowers Foods, Inc. Derivative Litigation*, Master File No. SUCV2018000405, pending in the Superior Court of Thomas County, Georgia (the "State Derivative Action," and, together with the Federal Derivative Action, the "Actions"), pursuant to a stipulation of settlement filed with the Court (the "Settlement" or the "Stipulation"). The "Settling Parties" include the parties to the Actions as well as a shareholder named Janet Lovette (the "Shareholder").

As explained below, on _____, 201_, at ___ __.m., the Court will hold a hearing (the "Settlement Hearing") to determine: (i) whether to enter an order approving the terms of the

Settlement as fair, reasonable, and adequate; (ii) whether a final judgment should be entered (the "Judgment"); (iii) whether the Court should award the requested attorneys' fees and reimbursement of expenses for Plaintiffs' counsel and Shareholder's counsel and the Service Awards (as defined below); and (iv) such other matters as may be necessary or proper under the circumstances.

The terms of the Settlement are set forth in the Stipulation dated October 28, 2019. The Settlement provides for corporate governance reforms designed to protect the Company going forward. If approved by the Court, the Settlement will fully resolve the Actions and the Shareholder Demand on the terms set forth in the Stipulation and summarized in this Notice, including resulting in the dismissal of the Actions *with prejudice*. For a more detailed statement of the matters involved in the Actions, the Settlement, and the terms discussed in this Notice, the Stipulation may be inspected at the Clerk of Court's office at the C.B. King United States Courthouse, 201 West Broad Avenue, Albany, Georgia 31701. The Stipulation is also available for viewing via a link on the "Investor Relations" page of Flowers' website at https://www.flowersfoods.com.

This Notice is not intended to be an expression of any opinion by the Court with respect to the merits of the claims made in the Actions or the Shareholder Demand, but is merely to advise you of the pendency and settlement of the Action.

**There is No Claims Procedure.** This case was brought to protect the interests of Flowers and its stockholders. The Settlement will result in changes to the Company's corporate governance, not in payment to individuals, and, accordingly, there will be no claims procedure.

## I.   SUMMARY OF THE ACTION

### A.   Background of the Allegations

The plaintiffs in the Actions (the "Plaintiffs") brought the Actions against Flowers, as a nominal defendant, and certain individuals that Plaintiffs' claimed breached their fiduciary duties as directors or officers of Flowers (the "Individual Defendants"). The Individual Defendants and Flowers are together referred to as the "Defendants."

In the Actions and the Shareholder Demand, Plaintiffs and the Shareholder assert that Flowers relies heavily on an "Independent Distributor Model" to operate its direct-to-store delivery segment. In utilizing this model, Flowers has classified, and continues to classify, its independent distributors as "independent contractors," and thus the Company has not made certain benefit payments to the independent distributors that they may have received if they had been classified as employees. The Plaintiffs and the Shareholder allege that, since July 2015, Flowers has faced nearly two dozen lawsuits by distributors alleging they were misclassified as independent contractors rather than as employees. The Plaintiffs and the Shareholder (collectively) further assert that the Individual Defendants and certain additional individuals referenced in shareholder demand letters (the "Additional Identified Persons") knowingly misclassified workers as independent contractors in violation of the Fair Labor Standards Act ("FSLA"). Specifically, the Plaintiffs and the Shareholder (collectively) claim, among other things, that the Individual Defendants and certain Additional Identified Persons breached their fiduciary duties.

Defendants deny the allegations in the Actions and the Shareholder Demand.

### B.   Procedural History

#### 1.   The Federal Derivative Action

In accordance with Georgia law (O.C.G.A. § 14-2-742), on September 28, 2016 and March 16, 2017, respectively, plaintiffs Stephen Goldberger ("Goldberger") and William D.

Wrigley ("Wrigley") each served separate litigation demand letters on the Flowers Board of Directors. On November 30, 2016, counsel for Goldberger entered into an agreement with counsel for Defendants tolling the deadline for Defendants to respond to the demand under O.C.G.A. § 14-2-742 until ninety (90) days following a ruling on the motion to dismiss in the related securities class action captioned *In re Flowers Foods, Inc. Securities Litigation*, Case No. 7:16-cv-00222-WLS (M.D. Ga.) (the "Securities Action"). On May 2, 2016, counsel for Wrigley entered into a similar tolling agreement (the "Tolling Agreements").

The Court denied the motion to dismiss the Securities Action on March 23, 2018. Thereafter, Wrigley and Goldberger each filed verified shareholder derivative complaints in the U.S. District Court for the Middle District of Georgia on June 8, 2018 and June 14, 2018, respectively.

On June 22, 2018, Wrigley, Goldberger, and Defendants jointly moved the Court for an order: (i) consolidating the actions; (ii) appointing Federman & Sherwood as lead counsel, Holzer & Holzer, LLC as Liaison Counsel, and Wrigley as lead plaintiff; and (iii) deferring the consolidated action pending a ruling on a motion for summary judgment in the Securities Action or notification of settlement of the Securities Action. The Court issued the order granting that motion on June 27, 2018.

### 2.    The State Derivative Action

In accordance with Georgia law (O.C.G.A. § 14-2-742), plaintiffs Frank Garnier ("Garnier") and the Margaret Cicchini Family Trust (the "Trust") each served litigation demand letters on the Board on May 24, 2018 and June 11, 2018, respectively.

On June 21, 2018, the Trust and Garnier both filed individual shareholder derivative actions against the Individual Defendants in the Superior Court of Thomas County in the state of Georgia. The Board had not responded to either of the litigation demand letters. On July 5, 2018, the Trust,

Garnier, and Defendants jointly moved the court for an order: (i) consolidating the actions; (ii) appointing Pomerantz and Levi & Korsinsky as co-lead counsel, Ken Hodges Law as liaison counsel, and the Trust and Garnier as lead plaintiffs; and (iii) deferring the consolidated action pending a ruling on a motion for summary judgment in the Securities Action or notification of settlement of the Securities Action.  The court issued the order on July 12, 2018.

### 3.    The Shareholder Demand

By letter dated June 1, 2018, the Shareholder's counsel stated that Shareholder was a Flowers shareholder, made certain demands upon the Defendants, and threatened to bring suit derivatively on behalf of Flowers.  The June 1, 2018 letter, among other things, demanded that the Board commence a civil action against Defendants to redress their alleged breach of fiduciary duty. Defendants' counsel responded to the June 1, 2018 letter on August 15, 2018 and stated that the Company would address the demand in accordance with the process set forth in the deferral orders entered in the State and Federal Derivative Actions.  On April 3, 2019, the Company received a letter from the Shareholder requesting to inspect certain corporate books, records, and documents within the Company's possession, custody, and control for the period beginning on February 7, 2013 through the present in order to investigate the potential wrongdoing, mismanagement, and breaches of fiduciary duties described in the demand letter (the June 1, 2018 and the April 3, 2019 letters, collectively, are the "Shareholder Demand").

### 4.    Settlement Negotiations

Consistent with the terms of the Tolling Agreements, beginning on August 16, 2018, Defendants produced to Plaintiffs' counsel and Shareholder's counsel over 363,000 pages of internal Company documents that it produced in the Securities Action, as well as transcripts of depositions taken in the Securities Action.

On March 15, 2019, Plaintiffs' counsel submitted a detailed and confidential settlement demand letter to Defendants' counsel outlining a proposed framework for settlement, which included, *inter alia*, detailed proposed corporate governance reforms.  On April 21, 2019, Shareholder's counsel sent a detailed and confidential settlement demand letter to Defendants' counsel that also included proposed corporate governance reforms.  Upon receipt of Plaintiffs' and Shareholder's settlement demands, the Settling Parties engaged in good faith, arm's-length negotiations.  This negotiation included two full day in-person mediations overseen by Robert A. Meyer of JAMS Mediation, Arbitration and ADR Services.  The first mediation was held on April 29, 2019 in New York, New York.  Though the first mediation did not result in a resolution to the Actions and the Shareholder Demand, the Settling Parties continued their negotiations throughout the following months.  A second mediation was held on September 13, 2019 in Los Angeles, California.  At the conclusion of this mediation, the Settling Parties reached an agreement on all material terms of the Settlement and executed a term sheet to that effect.

## II.   TERMS OF THE PROPOSED DERIVATIVE SETTLEMENT

The principal terms, conditions, and other matters that are part of the Settlement, which is subject to approval by the Court, are summarized below.  This summary should be read in conjunction with, and is qualified in its entirety by reference to, the text of the Stipulation.

### A.   Flowers Agrees to Adopt Corporate Governance Reforms

Flowers, through the Board, shall adopt and/or maintain the corporate governance reforms detailed below (the "Reforms") within sixty (60) calendar days of the entry of the Judgment following final approval of the Settlement.  Flowers shall take the necessary steps to adopt and implement the Reforms, to the extent that such Reforms have not already been adopted and implemented.  Except where specified otherwise, the Reforms shall be maintained for a period of

no less than four (4) years from the date of implementation, except for modification required by applicable law, regulation, or technological advancements.

Flowers acknowledges that the adoption of the corporate governance Reforms confers a benefit upon the Company and that the Actions and the Shareholder Demand were factors in Company's adoption of the Reforms.

**B.    Corporate Governance Reforms and Confirmation of Certain Officer Responsibilities**

**1.    Corporate Governance Reforms**

**(a)    Regulatory Disclosure**

Flowers will add a narrative to the proxy or annual report summarizing the consideration or review by the Audit Committee of regulatory issues during the relevant year.

**(b)    Amendment of the Audit Committee Charter**

The Board shall approve the amendment of the Audit Committee's charter in accordance with the revisions of that document as set forth in Exhibit A-1 to the Stipulation.

**(c)    Disclosure Committee Chairman Report to Audit Committee**

The Chairman of Flowers' Disclosure Committee will report quarterly to the Audit Committee.

**(d)    Disclosure Committee Charter**

The Disclosure Committee shall adopt a charter as set forth in Exhibit A-2 to the Stipulation.

**(e)    Presentation to Compensation Committee's Consultant**

A consultant to the Compensation Committee of the Board will review Flowers' existing clawback policy and consider whether additional flexibility should be provided under that policy. As part of that review, Plaintiffs' counsel in the Actions may provide a thirty (30) minute telephonic presentation to the consultant. Flowers' counsel and/or counsel representing any relevant committee may listen to the telephonic presentation.

**(f)    Officer and Director Education**

Flowers' outside counsel will provide an annual update to the Board and Flowers' Section 16 officers regarding applicable labor and franchise laws and regulations, including the FLSA.

Also, the officers serving in the positions designated in Exhibit A-3 to the Stipulation shall receive formal training each year regarding compliance with the FLSA.

## 2.    Confirmation of Officer Responsibilities for Corporate Compliance

Ms. Stephanie B. Tillman currently serves as Flowers' Chief Compliance Officer and Deputy General Counsel.  As of January 1, 2020, Ms. Tillman will become Flowers' Chief Legal Officer.  Beginning January 1, 2020, the functions and responsibilities of the Chief Compliance Officer will be subsumed within the office of the Chief Legal Officer and, as a result, Ms. Tillman will continue to perform the functions and responsibilities of Chief Compliance Officer after 2019.

## III.    DISMISSAL AND RELEASES

The Settlement is conditioned, among other things, upon entry of an order by the Court approving the Settlement, the Judgment, and dismissal of the Actions *with prejudice*.  The Settlement is also conditioned upon such dismissals having become final and non-appealable (the "Effective Date").

1.    Upon the Effective Date, the Releasing Persons (on behalf of themselves and derivatively on behalf of Flowers) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Persons from the Released Claims.  The Releasing Persons shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any Released Person with respect to any Released Claims, and shall be permanently barred and enjoined from initiating, instituting, commencing, maintaining, or prosecuting any of the Released Claims against any of the Released Persons.  Upon final approval of the Settlement, the Releasing Persons shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of any state, federal, or foreign law, or principle of common law, which may have the effect of limiting the foregoing release.  The foregoing release shall include a release of Unknown Claims.

## A.    Definitions

As used in this Notice:

(1)     "Related Person(s)" means each of a person's or an entity's past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, divisions, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person or entity acting or purporting to act for or on behalf of any person or entity, and each of their respective predecessors, successors, and assigns.

(2)     "Released Claim(s)" means collectively all claims (including Unknown Claims), demands, debts, losses, damages, duties, rights, disputes, actions, causes of action, liabilities, obligations, judgments, suits, matters, controversies, proceedings, or issues, of any kind, nature, character, or description whatsoever (and including, but not limited to, any claims for damages, whether compensatory, consequential, special, punitive, exemplary, or otherwise, and any and all fees, costs, interest, expenses, or charges), whether known or unknown, contingent or absolute, suspected or unsuspected, foreseen or unforeseen, disclosed or undisclosed, concealed or hidden, apparent or not apparent, accrued or unaccrued, matured or unmatured, liquidated or not liquidated, asserted or unasserted, at law or in equity, that have been asserted, could have been asserted, or in the future could be asserted against any Released Persons in the Shareholder Demand, the Actions, or in any other court, tribunal, forum, or proceeding, based upon, arising from, or in any way related to the transactions or occurrences referenced in the Actions and the Shareholder Demand (including without limitation claims of fraud, breach of any duty, negligence, gross negligence, mismanagement, gross mismanagement, corporate waste, abuse of control, unjust enrichment,

disgorgement, recoupment, contribution, indemnification, and violations of federal securities laws, whether individual, class, direct, derivative, representative, legal, equitable, or any other type, and arising under United States federal, state or local law, foreign law, common law, statutory law, administrative law, rule, regulation, or at equity).

(3)     "Released Person(s)" means collectively each and all of (i) the Defendants; (ii) the Additional Identified Persons; (iii) the Defendants' Related Persons; and (iv) the Additional Identified Persons' Related Persons.

(4)     "Releasing Person(s)" means Plaintiffs and Shareholder (for themselves and derivatively on behalf of Flowers), Current Flowers Stockholders, and each of Plaintiffs', Shareholder's, and Current Flowers Stockholders' Related Persons.

(5)     "Unknown Claims" means any claim a person or entity does not know or suspect to exist in his, her, or its favor at the time of the releases provided for herein, including claims which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the persons or entities released as described herein, or might have affected his, her, or its decision not to object to this Settlement.  With respect to any and all released claims, the Settling Parties stipulate and agree that, upon the Effective Date, the releasing persons and entities shall expressly waive, and shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive, and the releasing persons and entities shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all

provisions, rights, and benefits conferred by any United States federal law or any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent in effect to California Civil Code § 1542.  The Settling Parties acknowledge that they may discover facts in addition to or different from those now known or believed to be true by them with respect to the released claims, but it is the intention of the Settling Parties completely, fully, finally, and forever to compromise, settle, release, discharge, and extinguish any and all of the released claims, known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.  The Settling Parties acknowledge, and the releasing persons and entities shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and was a material element of the Settlement.

2.      Upon the Effective Date, Defendants and each of the other Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, Shareholder, and Plaintiffs' and Shareholder's Counsel (as defined in the Stipulation) from all claims, sanctions, actions, liabilities, or damages arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Actions, the Shareholder Demand, or the Released Claims.  The foregoing release shall include a release of Unknown Claims.

3.      Notwithstanding ¶¶ III 1 and 2 above, nothing in the Stipulation or the Judgment shall provide a release of any claims to enforce this Stipulation, the Settlement, or the Judgment or bar any action by any Settling Party to enforce the terms of the Stipulation, the Settlement, or the Judgment.  In addition, nothing in ¶¶ III 1 and 2 above is intended to release any rights to

indemnification, insurance coverage, or advancement of expenses that any Released Person has or may have under any insurance policy, contract, bylaw, or charter provision, or under Georgia law, including, but not limited to, any rights any Released Person has or may have related to any pending or threatened civil or government proceedings.

## IV.    ATTORNEYS' FEES AND EXPENSES

After negotiation of the principal terms of the Settlement, counsel for the Settling Parties, with the substantial assistance and oversight of the mediator Robert Meyer of JAMS Mediation, Arbitration and ADR Services separately negotiated at arm's-length the amount of attorneys' fees and reimbursement of expenses to be paid to Plaintiffs' counsel and Shareholder's counsel.  As a result of these negotiations, Flowers agreed to cause its directors' and officers' liability insurer to pay to Plaintiffs' counsel and Shareholder's counsel an award of attorneys' fees and expenses in the total amount of One Million Three Hundred Thousand and 00/100 dollars ($1,300,000) (the "Fee Award"), subject to approval of the Court.  To date, Plaintiffs' counsel and Shareholder's counsel have not received any payments for their efforts on behalf of Flowers.  The Settling Parties mutually agree that the Fee Award is fair and reasonable in light of the benefits conferred upon Flowers and the Current Flowers Stockholders by the Settlement.

Each of the Plaintiffs and the Shareholder (Janet Lovette) may also apply for Court approval of service awards in the amount of $1,500 each (the "Service Awards"), in light of the benefits they have helped to create for the Current Flowers Stockholders.  The Service Awards, to the extent that they are applied for and approved by the Court in whole or in part, shall be funded solely from the Fee Award.  The Service Awards shall not increase the amount of any fees or expenses to be paid by Defendants or on their behalf.

## V.      REASONS FOR THE SETTLEMENT

Counsel for the Settling Parties believe that the Settlement is in the best interests of Flowers and the Current Flowers Stockholders.

### A.      Why Did The Plaintiff Agree to Settle?

The Plaintiffs and the Shareholder contend, after an extensive investigation, which included, *inter alia*, (a) inspecting, reviewing, and analyzing the Company's public filings with the SEC; (b) researching corporate governance issues; (c) researching the applicable law with respect to the claims asserted in the Actions and the Shareholder Demand and the potential defenses thereto; (d) reviewing and analyzing over 350,000 pages of documents produced by Flowers; and (e) participation in two mediation sessions, that, while they believe the claims asserted in the Actions on behalf of Flowers have merit, (i) they recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Actions through trial and appeal; (ii) they have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Actions and the litigation contemplated by the Shareholder Demand, as well as the difficulties and delays inherent in such litigation; and (iii) they are mindful of the inherent problems of proof and possible defenses to the claims asserted in the Actions and the Shareholder Demand.  Plaintiffs' counsel and Shareholder's counsel believe that the Settlement will result in corporate governance enhancements.  Plaintiffs, Shareholder, and their counsel contend that, based on the foregoing evaluation, they have determined that the Settlement set forth in the Stipulation is in the best interests of Flowers and confers benefits upon Flowers and the Current Flowers Stockholders.

### B.      Why Did the Defendants Agree to Settle?

Defendants have denied, and continue to deny, each and all of the claims and contentions alleged by the Plaintiffs in the Actions and the Shareholder in the Shareholder Demand.

Nonetheless, Defendants contend that (i) they have taken into account the uncertainty, distraction, disruption, burden, expense, and risks inherent in any litigation; and (ii) they have therefore determined that it is desirable that the Actions and the Shareholder Demand be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation. Flowers states it has concluded that the Settlement set forth in the Stipulation confers a benefit to Flowers and is in the best interests of the Company and the Current Flowers Stockholders.

## VI.   THE SETTLEMENT HEARING AND YOUR RIGHT TO OBJECT, BE HEARD, AND ATTEND

On _____, 201_, at _____ __.m., the Court will hold the Settlement Hearing before the Hon. W. Louis Sands in Courtroom ___, the United States District Court for the Middle District of Georgia, C.B. King United States Courthouse, 201 West Broad Avenue, Albany, Georgia 31701. The Settlement Hearing may be continued by the Court without further notice.

At the Settlement Hearing, the Court will consider (i) whether to enter an order approving the terms of the Settlement (including the release of claims against, among others, Flowers and the Individual Defendants) as fair, reasonable and adequate; (ii) whether a final judgment should be entered dismissing the Action *with prejudice*; (iii) whether the Court should award the Fee Award, including the Service Awards; and (iv) such other matters as may be necessary or proper under the circumstances.

You have the right to object to the proposed Settlement and you may, but are not required, to appear in person or through counsel at the Settlement Hearing to present such objections to the Settlement or the application for an award of attorneys' fees and expenses. However, no Current Flowers Stockholder shall be permitted to object or be heard to present such objection to the approval of the proposed Settlement and award of attorneys' fees and expenses unless that Current

Flowers Stockholder has, ***at least twenty-one (21) calendar days prior to the Settlement Hearing***, filed with the Clerk of the Court (1) a written objection to the Settlement setting forth: (a) the stockholder's name, address, and telephone number; (b) the nature of the objection; (c) proof of current ownership of Flowers stock, including the number of shares of Flowers stock and the date of purchase; and (d) any documentation in support of such objection; and (2) if a Current Flowers Stockholder intends to appear in person, or through counsel, and requests to be heard at the Settlement Hearing, such stockholder must have provided, in addition to the requirements of (1) above, (a)  a written notice of such stockholder's intention to appear; and (b) the identities of any witnesses the stockholder intends to call at the Settlement Hearing and a statement as to the subjects of their testimony, signed as authorized by the objecting stockholder.

YOUR WRITTEN OBJECTIONS MUST BE ON FILE WITH THE CLERK OF THE COURT NO LATER THAN _____ ___, 201_.  The Court Clerk's address is:

> Clerk of the Court
> C.B. King United States Courthouse
> 201 West Broad Avenue
> Albany, Georgia 31701

YOU ALSO MUST DELIVER COPIES OF THE MATERIALS TO DESIGNATED COUNSEL FOR THE SETTLING PARTIES (BY HAND, OVERNIGHT COURIER, OR FIRST CLASS MAIL).

Counsel's addresses are:

> ***Lead Counsel for Plaintiff***
>
> William B. Federman
> FEDERMAN & SHERWOOD
> 10205 N. Pennsylvania Avenue
> Oklahoma City, OK 73120

***Counsel for Nominal Defendant Flowers***

Michael J. McConnell
JONES DAY
1420 Peachtree Street N.E., Suite 800
Atlanta, GA 30309-3053

Unless the Court orders otherwise, your objection will not be considered unless it is timely filed with the Court and delivered to counsel identified above.  Any person or entity who fails to object or otherwise request to be heard in the manner prescribed above will be deemed to have waived the right to object to any aspect of the Settlement or otherwise request to be heard (including the right to appeal) and will be forever barred from raising such objection or request to be heard in this or any other action or proceeding.

## VII.   <u>HOW TO OBTAIN ADDITIONAL INFORMATION</u>

This Notice summarizes the Stipulation.  It is not a complete statement of the events regarding the Actions or the Shareholder Demand, or the provisions of the Stipulation.  There is additional information concerning the Settlement available in the Stipulation.  The Stipulation may be viewed via a link on the "Investor Relations" page of Flowers' website at https://www.flowersfoods.com.  You may also inspect the Stipulation during business hours at the office of the Clerk of the Court, United States District Court for the Middle District of Georgia, C.B. King United States Courthouse, 201 West Broad Avenue, Albany, Georgia 31701.  However, you must appear in person to inspect these documents.  The Clerk's office will not mail copies to you.

For more information concerning the Actions, the Shareholder Demand, and the Settlement, you may also call or write to: Federman & Sherwood, c/o William B. Federman, 10205 N. Pennsylvania Avenue, Oklahoma City, OK 73120, Telephone: (405) 235-1560.

**PLEASE DO NOT CALL, WRITE, OR OTHERWISE DIRECT QUESTIONS TO**

**EITHER THE COURT OR THE CLERK'S OFFICE.**

DATED _____ __, 2019
                                    BY ORDER OF THE COURT
                                    UNITED STATES DISTRICT COURT
                                    MIDDLE DISTRICT OF GEORGIA

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| IN RE: FLOWERS FOODS INC. DERIVATIVE LITIGATION | ) ) Master File No.: 7:18-cv-00084-WLS ) ) |

## <u>SUMMARY NOTICE OF PROPOSED DERIVATIVE SETTLEMENT</u>

TO:    **ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF STOCK OF FLOWERS FOODS, INC. ("FLOWERS" OR THE "COMPANY") AS OF OCTOBER 28, 2019 ("CURRENT FLOWERS STOCKHOLDERS").**

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Middle District of Georgia (the "Court"), that a proposed Settlement has been reached among the parties to the stockholder actions brought derivatively on behalf of Flowers, captioned *In re: Flowers Foods, Inc. Derivative Litigation*, Master File No.: 7:18-cv-00084-WLS, pending in the United States District Court for the Middle District of Georgia (the "Federal Derivative Action") and *In re Flowers Foods, Inc. Derivative Litigation,* Master File No. SUCV2018000405, pending in the Superior Court of Thomas County, Georgia (the "State Derivative Action," and, together with the Federal Derivative Action, the "Actions"), pursuant to a stipulation of settlement filed with the Court (the "Settlement" or the "Stipulation").  The "Settling Parties" include the parties to the Actions as well as a shareholder named Janet Lovette (the "Shareholder").

The plaintiffs in the Actions (the "Plaintiffs") and the Shareholder asserted claims on behalf of Flowers against certain current and former officers and directors of Flowers.  Plaintiffs and the Shareholder alleged, among other things, that these individuals breached their fiduciary duties in connection with the purported misclassification of employees as independent contractors.

Under the terms of the Settlement, Flowers shall adopt certain corporate governance reforms described in the Stipulation.  In addition, Flowers agreed that an award of attorneys' fees and reimbursement of expenses to Plaintiffs' counsel and Shareholder's counsel in the total amount of One Million Three  Hundred Thousand and 00/100 dollars ($1,300,000.00), subject to approval of the Court, is fair and reasonable in light of the benefits conferred upon Flowers and the Current Flowers Stockholders.  Flowers states that the Settlement is in the best interests of the Company and the Current Flowers Stockholders.

On _____, 201_, at _____ __.m., the Court will hold a hearing (the "Settlement Hearing") before the Hon. W. Louis Sands in Courtroom ___, the United States District Court for the Middle District of Georgia, C.B. King United States Courthouse, 201 West Broad Avenue, Albany, Georgia 31701, to determine: (i) whether to enter an order approving the terms of the Settlement (which provides for the dismissal *with prejudice* of the Federal Derivative Action and the State Derivative Action and the release of claims) as fair, reasonable, and adequate; (ii) whether a final judgment should be entered dismissing the Federal Derivative Action *with prejudice*; (iii) whether the Court should award the requested attorneys' fees and reimbursement of expenses for Plaintiffs' counsel and the "Service Awards" (as defined in the Stipulation); and (iv) such other matters as may be necessary or proper under the circumstances.  The Court may adjourn the Settlement Hearing without further notice to Flowers stockholders.

**PLEASE READ THIS SUMMARY NOTICE CAREFULLY AND IN ITS ENTIRETY.  IF YOU ARE A CURRENT FLOWERS STOCKHOLDER, YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT OF THE ACTION**.

This is a summary notice only.  For additional information about the claims asserted in the Actions, the Shareholder Demand and the terms of the proposed Settlement, please refer to the documents filed in the Federal Derivative Action, the Stipulation, and the full-length Notice of Proposed Settlement (the "Notice").  The Stipulation and Notice may be viewed via a link on the "Investor Relations" page of Flowers' website at https://www.flowersfoods.com.

You have the right to object to the proposed Settlement and you may, but are not required, to appear in person or through counsel at the Settlement Hearing to present such objections to the Settlement or the award of attorneys' fees and expenses.  However, no Current Flowers Stockholder shall be permitted to object or be heard to present such objection to the approval of the proposed Settlement and award of attorneys' fees and expenses, unless that Current Flowers

Stockholder has, *at least twenty-one (21) calendar days prior to the Settlement Hearing*, filed with the Clerk of the Court (1) a written objection to the Settlement setting forth: (a) the stockholder's name, address, and telephone number; (b) the nature of the objection; (c) proof of current ownership of Flowers stock, including the number of shares of Flowers stock and the date of purchase; and (d) any documentation in support of such objection; and (2) if a Current Flowers Stockholder intends to appear in person, or through counsel, and requests to be heard at the Settlement Hearing, such stockholder must have provided, in addition to the requirements of (1) above, (a) a written notice of such stockholder's intention to appear; and (b) the identities of any witnesses the stockholder intends to call at the Settlement Hearing and a statement as to the subjects of their testimony, signed as authorized by the objecting stockholder.

YOUR WRITTEN OBJECTIONS MUST BE ON FILE WITH THE CLERK OF THE COURT NO LATER THAN _____ ___, 201_.  The Court Clerk's address is:

> Clerk of the Court
> C.B. King United States Courthouse
> 201 West Broad Avenue
> Albany, Georgia 31701

YOU ALSO MUST DELIVER COPIES OF THE MATERIALS TO THE DESIGNATED COUNSEL FOR THE SETTLING PARTIES (BY HAND, OVERNIGHT COURIER, OR FIRST CLASS MAIL).

Counsel's addresses are:

> ***Lead Counsel for Plaintiffs***
>
> William B. Federman
> FEDERMAN & SHERWOOD
> 10205 N. Pennsylvania Avenue
> Oklahoma City, OK 73120

***Counsel for Nominal Defendant Flowers***

Michael J. McConnell
JONES DAY
1420 Peachtree Street N.E., Suite 800
Atlanta, GA 30309-3053

Unless the Court orders otherwise, your objection will not be considered unless it is timely filed with the Court and delivered to counsel identified above.  Any person or entity who fails to object or otherwise to request to be heard in the manner prescribed above will be deemed to have waived the right to object to any aspect of the Settlement or otherwise request to be heard (including the right to appeal) and will be forever barred from raising such objection or request to be heard in this or any other action or proceeding.

**PLEASE DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE**

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| IN RE: FLOWERS FOODS INC.     ) | |
| DERIVATIVE LITIGATION        ) | Master File No.: 7:18-cv-00084-WLS |
|                       ) | |
|                       ) | |

**[PROPOSED] ORDER APPROVING DERIVATIVE SETTLEMENT
AND ORDER OF DISMISSAL WITH PREJUDICE**

This matter came before the Court for hearing pursuant to the Order of this Court, dated

_____, 2019 ("Order"), on Plaintiffs' Motion for Final Approval of Derivative Settlement

("Settlement") set forth in the Stipulation and Agreement of Settlement, dated October 28, 2019

(the "Stipulation") (Doc. ___).  Due and adequate notice having been given of the Settlement, and

the Court having considered all papers filed and proceedings had herein, and otherwise being fully

informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED,

ADJUDGED AND DECREED that:

1.    The Court GRANTS Plaintiffs' Motion for Final Approval of Derivative Settlement

(Doc. ___).

2.    This Order Approving Derivative Settlement and Order of Dismissal With

Prejudice (the "District Court Approval Order") incorporates by reference the definitions in the

Stipulation, and all capitalized terms used herein shall have the same meanings as set forth in the

Stipulation (in addition to those capitalized terms defined herein).

3.    The Court finds that the notice provided to Current Flowers Stockholders was the

best notice practicable under the circumstances of these proceedings and of the matters set forth

therein, including the Settlement set forth in the Stipulation, to all Persons entitled to such notice.

The notice fully satisfied the requirements of Federal Rule of Civil Procedure 23.1 and the

requirements of due process.

4.      The Court finds that the terms of the Stipulation and Settlement are fair, reasonable, and adequate as to each of the Settling Parties, and hereby finally approves the Stipulation and Settlement in all respects, and orders the Settling Parties to implement and consummate its terms to the extent the Settling Parties have not already done so.  Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

5.      The Federal Derivative Action and all claims contained therein, as well as all of the Released Claims, are dismissed **WITH PREJUDICE**.  As among the Settling Parties, the parties are to bear their own costs, except as otherwise provided in the Stipulation or below.

6.      Upon the Effective Date, the Releasing Persons (on behalf of themselves and derivatively on behalf of Flowers) shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Persons from the Released Claims.  The Releasing Persons shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any Released Person with respect to any Released Claims, and shall be permanently barred and enjoined from initiating, instituting, commencing, maintaining, or prosecuting any of the Released Claims against any of the Released Persons.  The Releasing Persons shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of any state, federal, or foreign law, or principle of common law, which may have the effect of limiting the foregoing release.  The foregoing release shall include a release of Unknown Claims.

7.      Upon the Effective Date, Defendants and each of the other Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, Shareholder, Plaintiffs' Counsel, and

Shareholder's Counsel from all claims, sanctions, actions, liabilities, or damages arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Actions, the Shareholder Demand, or the Released Claims.  The foregoing release includes a release of Unknown Claims.

8.      Notwithstanding ¶¶ 6 through 7 above, nothing in this District Court Approval Order or the Judgment shall provide a release of any claims to enforce the Stipulation, the Settlement, or the Judgment or bar any action by any Settling Party to enforce the terms of the Stipulation, the Settlement, or the Judgment.  In addition, nothing in ¶¶ 6 through 7 above is intended to release any rights to indemnification, insurance coverage, or advancement of expenses that any Released Person has or may have under any insurance policy, contract, bylaw, or charter provision, or under Georgia law, including, but not limited to, any rights any Released Person has or may have related to any pending or threatened civil or government proceedings.

9.      The Court hereby approves the Fee Award as fair and reasonable, which amount shall be paid to Plaintiffs' Counsel and Shareholder's Counsel in accordance with the terms set forth in the Stipulation.

10.     The Court hereby approves the Service Awards to be paid in accordance with the terms set forth in the Stipulation.

11.     The provisions contained in the Stipulation (including any exhibits attached thereto) shall not be deemed a presumption, concession, or admission by any Settling Party of (i) any fault, liability, or wrongdoing, or (ii) lack of merit as to any facts or claims alleged or asserted in the Actions or in any other action or proceeding.  The provisions contained in the Stipulation shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Actions or in any other action or proceeding, whether civil,

-3-

criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement.  The Released Persons may file the Stipulation, this District Court Approval Order, and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, breach of contract, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.     During the course of the Federal Derivative Action, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

13.     Without affecting the finality of this District Court Approval Order and the Judgment in any way, this Court hereby retains continuing jurisdiction over the Federal Derivative Action to enter any further orders as may be necessary to effectuate, implement, and enforce the Stipulation and the Settlement provided for therein and the provisions of this District Court Approval Order.  The Settling Parties and each Current Flowers Stockholder are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court for the purpose of any suit, action, proceeding, or dispute arising out of or relating to the Settlement or the Stipulation, including the exhibits thereto, and only for such purposes.  Without limiting the generality of the foregoing, and without affecting the finality of the Judgment, the Court retains exclusive jurisdiction over any such suit, action, or proceeding.  Solely for purposes of such suit, action, or proceeding, to the fullest extent they may effectively do so under applicable law, the Settling Parties and Current Flowers Stockholders are hereby deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

14.     In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, the parties shall move the Court to vacate this District Court Approval Order and the Judgment, so that all Orders entered and releases delivered in connection with the Stipulation, District Court Approval Order, and Judgment shall be null and void, except as otherwise provided for in the Stipulation.

15.     This District Court Approval Order and the Judgment is a final and appealable resolution in the Federal Derivative Action as to all claims and the Court directs immediate entry of the Judgment forthwith by the Clerk in accordance with Rule 58, Federal Rules of Civil Procedure, dismissing the Federal Derivative Action with prejudice.

IT IS SO ORDERED.


DATED: _____          _____
                                        THE HONORABLE W. LOUIS SANDS
                                        SENIOR UNITED STATES DISTRICT JUDGE

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| IN RE: FLOWERS FOODS INC.<br>DERIVATIVE LITIGATION | )<br>) Master File No.: 7:18-cv-00084-WLS<br>)<br>) |

**[PROPOSED] JUDGMENT**

Plaintiffs William D. Wrigley and Stephen Goldberger, having moved for final approval of the derivative settlement set forth in the Stipulation and Agreement of Settlement, dated October 28, 2019, and the matter having come before the Honorable W. Louis Sands, Senior United States District Judge, and the Court, on _____, 2019, having issued its Order Approving Derivative Settlement and Order of Dismissal with Prejudice, and having directed the Clerk of the Court to enter judgment, it is hereby **ORDERED, ADJUDGED AND DECREED:**

1.      This Judgment incorporates by reference the Court's Order Approving Derivative Settlement and Order of Dismissal with Prejudice dated _____, 2019; and

2.      That for the reasons stated in, and pursuant to the terms set forth in, the Court's Order Approving Derivative Settlement and Order of Dismissal with Prejudice dated _____, 2019, Plaintiff's Motion for Final Approval of Derivative Settlement is granted; accordingly, this case is closed.

DATED: _____          _____
                                                                    THE HONORABLE W. LOUIS SANDS
                                                                    SENIOR UNITED STATES DISTRICT JUDGE